OPINION OF THE COURT
Gabrielli, J.
In the early evening hours of April 3, 1974, the police were summoned to an alleyway located behind a Key Foods Supermarket near the intersection of Sutphin Boulevard and 119th Avenue in the Borough of Queens. There they found the lifeless body of Bernard Jackson, who had been fatally shot in the right temple with a .25 caliber pistol belonging to Lucia Kennedy, the defendant in this prosecution for Jackson’s murder. The testimony at Kennedy’s trial showed that Kennedy was a member of the Savage Skulls, a neighborhood youth gang, while Jackson had belonged to the Seven Crowns, a rival gang with which Kennedy had previously been associated. A week or two before the murder, Kennedy had told Mark Robinson, another member of the Savage Skulls, to "[p]ut the word out that I’m going to kill [Jackson]”, because of Kennedy’s belief that Jackson had assaulted Kennedy’s girl friend. Sandra Simon, a young woman who knew both Kennedy and Jackson, testified that she saw them together about 30 minutes prior to the murder on a street which was only a few blocks away from what was soon to become the scene of Jackson’s death. According to her testimony, Kennedy was hitting Jackson on the face and chest while holding him by his collar. Jackson was not resisting Kennedy physically, and Simon heard him say "[l]et me go. It wasn’t me. Stop hitting me. You and that damn gun.” Additional testimony was provided by Sheldon Dobie, another member of the Savage Skulls, who was standing in front of a liquor store on Sutphin Boulevard near the supermarket at the time of the murder. He testified that Kennedy, Jackson, and several other youths walked by him while he was standing there, and that Kennedy had one hand on Jackson’s shoulder and carried the murder weapon in his other hand. They walked to the intersection of Sutphin Boulevard and 119th Avenue and then turned the corner in the direction of the alleyway and disappeared from Dobie’s sight. A minute or two later, several other youths, some of whom he recognized as fellow members of the Savage Skulls, also passed Dobie and followed the same route. About a minute later he heard a shot, and then saw all but one of the youths who had passed him come running back *200 around the corner and up the block. The one who did not return was, of course, Jackson, whom they had left bleeding to death on the pavement behind them.
Following an investigation of the murder, Kennedy was arrested and charged with the crime of murder in that he intentionally caused the death of Bernard Jackson "by shooting him with a pistol”. Meanwhile, another member of the Savage Skulls, Wilfredo O., a juvenile, had been questioned by police in the course of an unrelated investigation. During that interrogation, he told investigating officers that he had killed Jackson, and made arrangements with other members of the gang to have the murder weapon turned over to the police. On May 16, 1974, Wilfredo O. was adjudicated a juvenile delinquent following his admission in Family Court that he had committed an unspecified act which would have constituted the crime of manslaughter in the second degree had it been committed by an adult, and was transferred to the custody of the State Division for Youth for a period of 18 months. It appears from the testimony of police officers at Kennedy’s trial that the act constituting manslaughter to which Wilfredo O. confessed was the murder of Bernard Jackson. Wilfredo O. was released from custody prior to Kennedy’s trial, and was not available to testify at that trial. Instead, testimony concerning his confession was elicited by defense counsel during cross-examination of the police officers to whom Wilfredo O. had made his statements.
.Kennedy was not indicted for accessorial conduct, and the trial court refused to give an acting in concert charge to the jury. Instead, the court charged the jury that in order to convict Kennedy they must find that he had actually shot Bernard Jackson. The jury convicted Kennedy of murder, and he appealed to the Appellate Division. That court (59 AD2d 539) at first reversed his conviction and ordered a new trial because of certain perceived trial errors. Upon defendant’s motion for reargument of the appeal, however, the Appellate Division granted the motion to reargue, concluded that the People had failed to prove defendant’s guilt beyond a reasonable doubt, and ordered the indictment dismissed. The People now appeal to this court. We conclude that the People did meet their burden of proof and that the indictment should not be dismissed, but that a new trial is needed because of certain errors discussed below.
Turning first to defendant’s claim that the People failed to *201 prove him guilty beyond a reasonable doubt, we disagree with defendant’s contention that he may not be convicted, despite the overwhelming circumstantial evidence of his guilt, simply because another person, Wilfredo O., has confessed to the crime. In essence, defendant argues that the mere existence of evidence which would preclude his conviction if believed by the jury suffices to prevent his conviction even if that evidence is disbelieved by the jury, when the case against him is based on circumstantial evidence. So viewed, defendant’s argument contains the seeds of its own destruction, for a jury faced with conflicting evidence may accept some and reject other items of evidence, absence any logical inconsistency in the jury’s choice, regardless of whether that evidence is circumstantial or direct.
It has long been the law in this State that a criminal conviction based upon circumstantial evidence is subject to strict judicial scrutiny (see People v Bennett, 49 NY 137, 144-145). This is so not because circumstantial evidence is any less reliable than direct evidence, for each of the two types of evidence is subject to certain inherent weaknesses (see 1 Wigmore [3d ed], Evidence, § 26). Indeed, there is much to be said for the argument that direct testimony may often be of more dubious value, as is indicated by the extensive literature on the lack of reliability of eyewitness testimony (see, e.g., O’Connor, "That’s the Man”: A Sobering Study of Eyewitness Identification and the Polygraph, 49 St John’s LR 1; Borchard, Convicting the Innocent) as well as the often expressed judicial concern with the problem of impermissibly suggestive identification procedures (see, e.g., United States v Wade, 388 US 218, 228-239). Rather, cases involving circumstantial evidence must be closely reviewed because they often require the jury to undertake a more complex and problematical reasoning process than do cases based on direct evidence. In the latter situation, the jury is normally concerned primarily with assessing the credibility of witnesses, a role for which the jury is superbly suited. Where, however, the defendant’s guilt is to be proven, if at all, by circumstantial evidence only, the jury must attempt a careful and close analysis of the evidence and determine what inferences can and should be drawn not merely from each separate piece of evidence, but from the whole complex of interrelated information which is presented in evidence. This is not to suggest, of course, that a jury need not carefully analyze the evidence in a case based on direct *202 evidence. However, in such a case, the jury has less need to depend on inference, and is more likely to be faced with the relatively less complex, although no less difficult task of determining which witnesses are telling the truth. In a circumstantial evidence case, in contradistinction, the reasoning process tends to be more complex, and is thus more subject to error. Hence, close judicial supervision is necessary to ensure that the jury does not make inferences which are based not on the evidence presented, but rather on unsupported assumptions drawn from evidence equivocal at best (see People v Cleague, 22 NY2d 363, 367). Careful review of such cases is needed to decrease "a danger legitimately associated with circumstantial evidence — that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree” (People v Benzinger, 36 NY2d 29, 32).
We have often had occasion to discuss the proper standard for testing the sufficiency of a conviction based solely on circumstantial evidence, and have clearly stated that the conclusion of guilt must be consistent with and flow naturally from the proven facts, and that those facts viewed as a whole must exclude "to a moral certainty” every conclusion other than guilt (e.g., People v Cleague, supra, at pp 365-366; People v Benzinger, supra, at p 32). Although it is easily stated, this standard often appears difficult of application, and sometimes "tends to be a confusing form of words” (People v Borrero, 26 NY2d 430, 435). Such difficulties often occur in the attempt to apply general principles of law to particular cases. This is so both because of the ambiguity necessarily inherent in the flawed device of language, which only approximates and never quite encompasses the exact idea sought to be expressed, and because of humanity’s ability to create distinctions even where there exist no real differences. Although this problem can never be completely avoided, it may to some extent be limited by continued reference to and reconsideration of the appropriate underlying principles, and by the conscious avoidance of undue reliance upon all too deceptive catchwords and set phrases rather than logic and reason.
Since the rationale underlying the requirement of careful scrutiny of decisions based on circumstantial evidence is the comparative ease with which logical flaws can creep into the reasoning process in such cases, our basic inquiry must always be whether the inferences which the jury must have drawn *203 from the evidence in order to convict the defendant, are in fact to be found in that evidence. As we have previously stated in determining whether the People had met their burden of proof through the use of circumstantial evidence, "[i]n the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts” (People v Wachowicz, 22 NY2d 369, 372).
In this case, the circumstantial evidence of Kennedy’s guilt is indeed strong, and must be viewed in the light most favorable to the People since they have prevailed at trial and thus we are required to assume that the jury credited the People’s witnesses (People v Montanez, 41 NY2d 53, 57). So viewed, the People proved that Kennedy believed he had a motive to kill Jackson, and had previously expressed his intent to do so; that Jackson had been taken by Kennedy to the scene of the murder at gun point; and that the fatal wound was inflicted by Kennedy’s gun, which was seen in Kennedy’s hands only moments before the murder. If this evidence does not suffice to sustain Kennedy’s conviction, it would be difficult to conceive of any evidence which could so serve. Thus, it is evident that the weight of evidence of Kennedy’s guilt, taken by itself, is clearly sufficient to sustain his conviction. The question before us is whether a different resolution is mandated by the fact that someone else has confessed to the crime. We conclude that it is not.
Initially, we note that the evidence concerning Wilfredo O.’s alleged involvement in the crime was essentially presented to the jury during the cross-examination of police officers concerning admissions he had made to them and others. As such, this evidence itself was both hearsay and circumstantial. Moreover, other than those admissions and Wilfredo O.’s subsequent confession in Family Court to unspecified acts which would constitute manslaughter if committed by an adult, there was no proof that Wilfredo O. was the murderer, and indeed no proof that he was even connected with the crime. No witness placed Wilfredo O. at the scene of the crime, and his assistance in recovering the pistol appears to have been limited to asking other gang members to arrange for its surrender to the police. In short, this evidence was hardly conclusive. Even were it more persuasive, however, the result would be the same. Clearly, if the jury had believed Wilfredo O.’s statements, if they had believed that Wildredo *204 O. rather than Lucia Kennedy slew Bernard Jackson, then the jury would have been required to acquit Kennedy under the clear and explicit charge given by the trial court. The jury did not acquit Kennedy, however, and hence we must assume that the jury did not credit the statements Wilfredo O. had made to the police. This determination was within the province of the jury, and should not be overturned by a reviewing court (see People v Bennett, 49 NY 137, 144, supra). Any other conclusion would lead to the establishment of a rule of law mandating that any item of evidence tending to exculpate a defendant, no matter how dubious its validity, would serve to preclude a conviction based on circumstantial evidence. Such a rule would accord with neither law nor logic, and we refuse to adopt it.
A jury does not lose its ability and power to assess the credibility of statements and witnesses and to accept or reject the truth of evidentiary material simply because the evidence submitted is in large part circumstantial. To so hold would be to misconstrue the criteria for reviewing decisions based on circumstantial evidence discussed above. Careful scrutiny of such cases is required because of the danger that the fact finder will simply assume too much on the basis of too little evidence. Where, however, there exists evidence, circumstantial or otherwise, which is sufficient to prove the defendant guilty beyond a reasonable doubt if that evidence is accepted by the jury, a verdict of guilty may not be overturned simply because the jury was also presented with other evidence, be it circumstantial or direct, which, if believed by the jury, would mandate an acquittal. This is so because it is for the jury to determine what evidence is to be believed and what evidence is to be discredited, as long as that decision does not involve any logical inconsistencies.
We have repeatedly stated that in a circumstantial evidence case "the facts proved must all be consistent with guilt and inconsistent with innocence” (People v Borrero, 26 NY2d 430, 434-435, supra). This does not mean, however, that every bit of evidence submitted to the jury must be inculpatory rather than exculpatory, nor that the introduction of a single item of exculpatory evidence mandates acquittal. Were this the law, a defendant willing to perjure himself could always avoid conviction where the People’s case is based upon circumstantial evidence, no matter how persuasive, by the simple stratagem of taking the stand and asserting his inno *205 cence, no matter how suspect his testimony. This is not the law. Rather, it is the function of the jury to sift through the conflicting evidence, direct or circumstantial, and to determine whether the defendant’s guilt has been proven beyond a reasonable doubt. Accordingly, the task of a court faced with a challenge to a verdict based on circumstantial evidence is to determine, by application of the standards discussed above, whether there exists sufficient inculpatory evidence to prove defendant’s guilt beyond a reasonable doubt if credited by the jury.
In this case, the evidence of Kennedy’s guilt was overwhelming, and the jury was free to disbelieve the admissions made by Wilfredo O. Hence, we must conclude that the verdict of guilty was based on proof of guilt beyond a reasonable doubt. Accordingly, the order of the Appellate Division dismissing the indictment cannot be sustained.
 This conclusion, however, does not fully resolve the appeal, for the defendant contends that a new trial is necessary because of certain errors in his first trial. Our examination of the record convinces us that a new trial is indeed necessary, both because of the trial court’s failure to apply the appropriate standards in deciding defendant’s motion to limit cross-examination into his prior behavior should he take the stand on his own behalf, and because of the prosecutor’s improper conduct in presenting that same information to the jury via cross-examination of defendant’s mother even though defendant himself did not testify.
Prior to trial, defendant moved to limit the extent of permissible cross-examination by the People into prior immoral, vicious, or criminal acts committed by him should he testify on his own behalf. Upon learning that those prior acts had not eventuated in convictions, the court stated that the law was well settled that the considerations we reiterated in People v Sandoval (34 NY2d 371) for determining when such cross-examination should be allowed, were applicable only to convictions, and could not serve to preclude questioning about incidents which did not result in convictions. This ruling was erroneous, since those standards are to be applied to cross-examination into alleged immoral, vicious, or criminal acts, regardless of whether those acts resulted in convictions (see People v Sandoval at p 373, supra). Since the court applied the wrong criteria in deciding defendant’s motion and thus did not properly exercise its discretion to determine the extent of *206 permissible cross-examination, there must be a new trial (see People v Davis, 44 NY2d 269, 275-276).
The court also erred in permitting the prosecutor to extensively cross-examine defendant’s mother concerning her personal knowledge of prior immoral, vicious, or illegal acts by defendant. Mrs. Kennedy testified on behalf of the defense and without objection that she had never seen the murder weapon, that defendant worked and contributed money to the family, and that he had never been convicted of a crime. On cross-examination, the People were permitted, over defense objection, to question her about her knowledge of her son’s prior possession of a gun at a specified time and place. The People contend that this questioning was permissible as an attempt to impeach Mrs. Kennedy, whom they characterize as a character witness. Assuming, arguendo, that Mrs. Kennedy did indeed serve as a character witness, any impeachment cross-examination should have been limited to her knowledge of defendant’s reputation, and should not have extended to her personal knowledge of the underlying acts (see Richardson, Evidence, § 153).
Accordingly, the order appealed from should be modified to the extent of reinstating the indictment and remitting the case to Supreme Court, Queens County, for a new trial, and, as so modified, affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur with Judge Gabrielli.
Order modified and case remitted to Supreme Court, Queens County, for a new trial in accordance with the opinion herein and, as so modified, affirmed.