■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCINE CC., Appellant.—Kane, J. P. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), ren-

dered October 19, 1983, which sentenced defendant upon her adjudication as a youthful offender.

The evidence, when viewed in the light most favorable to the People (*see, People v Kennedy,* 47 NY2d 196, 203), reveals the following sordid facts.

On January 14, 1983, at about 6:30 P.M., William Hendrickson and Carlton "Junior" Curtis were talking together on Broadway in the City of Kingston, Ulster County, when a white van pulled up containing defendant and her husband, Ernest. The four people agreed to meet after dinner and, at about 7:30 P.M., defendant and Ernest picked up Curtis at his home and drove to a bowling alley where they met Hendrickson.

Curtis had previously made plans to have a date with Linda Hertica and, after buying beer, the van proceeded to Hertica's place of employment. Hertica was not working, so they drove to her house and picked her up, arriving there at about 8:30 P.M. Curtis introduced her to defendant and Ernest, whom she had never met, and to Hendrickson, and the van proceeded to the residence of Ernest's brother. Ernest's brother was ill and unable to participate in the evening's activities, and the van next went to the house of Michael Jansen. After picking up Jansen, the group stopped to purchase a bottle of vodka and then proceeded to a deserted mountain road where they parked.

Hertica stated that, while at the mountain, defendant and Ernest suggested an orgy and that she and Curtis rejected the proposition. Curtis became upset and left the van once or twice and, finally, Ernest agreed to drive Curtis back home. Hertica claims that during the trip home, Ernest called to her to sit next to him, which allegedly aroused Curtis' jealously, resulting finally in Curtis receiving a bloody nose.

Curtis was dropped off at his home in Kingston, but when Hertica tried to exit the van she was allegedly detained. Hendrickson also wanted to leave but was restrained with the threat of violence. From there, the van was driven to a nearby dead end street. Hoping to escape, Hertica said she needed to go to the bathroom, but defendant followed her from the van. After admitting her ploy, Hertica was promptly punched by defendant and a fight ensued in which Hertica received cuts and scratches and was finally knocked unconscious. During the fight with defendant, Hertica observed Hendrickson being beaten by Ernest and Jansen. She regained consciousness to find defendant urinating on her. The two victims were then thrown back into the van.

Hertica testified that after being thrown into the van, she was restrained by Jansen, Ernest and defendant, that defendant and Ernest forced Hendrickson to remove Hertica's pants; and that defendant then sodomized her at Ernest's direction by committing an act of cunnilingus. Next, Ernest allegedly directed defendant to use a large rubber phallus on Hertica, which defendant did, causing Hertica severe pain. After this incident, defendant drove the van and Hertica lost consciousness for a period.

Hertica next recalls that Jansen and Ernest were beating Hendrickson with belts while defendant drove, and that they then made Hendrickson use a dildo on her, after which she passed out again. Hertica also recalled overhearing a discussion between defendant, Ernest and Jansen concerning what to do with the bodies of Hendrickson and Hertica, and she remembers being driven toward Pennsylvania where Hendrickson's unconscious body was dropped in a snowbank. After moving from the back of the van to the passenger seat, Hertica again fell asleep and was awakened when the van was stopped by a police officer from the Village of Walden, Orange County, after Ernest ran a stop sign. A computer check revealed that Ernest's license was suspended and he was placed under arrest. Jansen voluntarily drove the van back to the police station and Hertica informed an officer at the station that she had a "confession" to make, whereupon she related her version of the night's events. Based upon her statement, the police conducted a warrantless search of the van. In due course defendant, Ernest and Jansen were indicted in an 11-count indictment by the Ulster County Grand Jury.

After conducting a suppression hearing, County Court determined that the search of the van was proper and, accordingly, that the evidence seized was admissible. At the conclusion of a lenghty trial, defendant was convicted of sodomy in the first degree, unlawful imprisonment in the first degree, two counts of assault in the second degree, assault in the third degree and aggravated sexual abuse.* Despite the fact that the probation department recommended that defendant be denied youthful offender status, the County Court granted her application for said status and sentenced her to an indeterminate term of imprisonment of 1 to 3 years. This appeal by defendant ensued.

---

\* County Court set aside defendant's conviction for one count of assault in the second degree, that concerning the assault on Hendrickson.

Defendant asserts that the warrantless search of the van was improper. This contention must be rejected. Authority to search an automobile arises: "when there is probable cause to believe that it contains weapons, contraband *or evidence*, and there is ordinarily no requirement that the police delay their search until they obtain a warrant, even where the vehicle has been reduced to their control" (*People v Milerson*, 51 NY2d 919, 921; emphasis supplied).

In the instant case, after Ernest was arrested for driving while his license was suspended, Jansen voluntarily drove the van to the police station and parked it there. Thereafter, Hertica informed the police of the evening's events, including the information that Hendrickson had been beaten and abandoned in a snowbank. She then gave a statement to the Walden Chief of Police, reiterating the information about Hendrickson and describing the assault upon her person. Police officers were then told to search the van for evidence concerning Hendrickson. Before opening the van, they observed bloodstains on the door handles. On the basis of this evidence, probable cause existed to believe that evidence of the alleged beating of Hendrickson and the assault on Hertica would be found in the van. Accordingly, the County Court's determination on the suppression motion should not be disturbed.

Defendant next maintains that because there was testimony indicating that the conduct involved, aside from the alleged attempted murder, occurred in Greene County, the County Court of Ulster County lacked geographical jurisdiction under CPL 20.40. This argument is lacking in merit.

County Court charged the jury that it could find jurisdiction pursuant to CPL 20.40 (4) (g), which provides that: "An offense committed in a private vehicle during a trip thereof extending through more than one county may be prosecuted in any county through which such vehicle passed in the course of such trip." This exception is available only where it is impossible to determine where the crime occurred, and not merely when the crime occurred in a moving vehicle (*People v Moore*, 46 NY2d 1; *see also, People v Cullen*, 50 NY2d 168). However, the question of where an offense occurred is generally an issue of fact to be determined by the jury (*People v Moore, supra; People v Lowen*, 100 AD2d 518). Since, after full development of the issue, there remained considerable uncertainty concerning the situs of the criminal conduct here, we fail to find error in County Court's charge (*see*, Bellacosa, Practice Commen-

tary, McKinney's Cons Laws of NY, Book 11A, CPL 20.40, pp 91-92).

Finally, a review of the record reveals sufficient evidence to support the jury's verdict and we find no reason to disturb the sentence imposed by County Court. The judgment should, therefore, be affirmed.

Judgment affirmed. Kane, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.