■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GEBERT, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Browne, J.), rendered May 11, 1984, convicting him of rape in the first degree, sodomy in the first degree and sexual abuse in the first degree (three counts), upon a jury verdict, and imposing sentence.

Judgment affirmed, and case remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (5).

Viewing the evidence in a light most favorable to the People, as we are obliged to do at this stage, and giving them the benefit of every reasonable inference to be drawn therefrom *(see, People v Giuliano,* 65 NY2d 766, 768; *People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932; *People v Kennedy,* 47 NY2d 196, 203), we conclude that the defendant's guilt was proven beyond a reasonable doubt.

The conviction in this case arose out of an incident which occurred during the late evening hours of October 6, 1982. At the trial, the prosecution elicited testimony from the complainant that on October 6th, at approximately 11:30 P.M., while she was standing with a friend on the corner of 86th Street and Jamaica Avenue in Queens County, an unidentified person hit her from behind on the back of the neck, knocking her unconscious. When the complainant regained consciousness, she was seated in a car belonging to an acquaintance. She noticed that her companion was leaning against a building and that his face was covered with blood. The complainant thereupon discovered that her pocketbook was missing. She heard someone calling her from a large Cadillac stopped in the middle of Jamaica Avenue, indicating he had her pocketbook. Two persons were seated in the Cadillac. When she approached the vehicle, the complainant was forcibly dragged into the front seat by an individual identified as the defendant. The complainant was seated between the driver of the vehicle, a man whom she did not recognize, and the defendant. The two men transported the complainant to Forest Park in Queens County. Along the way, the complainant

struggled to escape, but the driver, whom she described as big and husky, held her firmly by the arm, and the defendant held her by her hair and arm and threatened her with a knife. When they reached the park, the Cadillac stopped. A second vehicle, which had been following behind, pulled in behind the Cadillac and four men emerged. The driver of the Cadillac then exited the car, leaving the complainant alone with the defendant. The occupants of the second vehicle surrounded the Cadillac. Meanwhile, the complainant pleaded with the defendant to let her go; the defendant responded by threatening to hurt her if she was not quiet. The defendant then dragged the complainant by her hair into the back seat. The interior lights of the vehicle were on. The defendant repeatedly punched and slapped the complainant, and, as she struggled, the defendant removed her clothing. Thereafter, the defendant, while holding the complainant down, sexually abused her and forced her to submit to acts of sexual intercourse and oral sodomy. During the course of the defendant's attack upon her, the complainant heard one of the onlookers yell the name "Gebby". When the defendant decided that she "had had enough", the complainant, clad only in her torn shirt, fled through the park, stopped a passing vehicle and asked the driver to take her to the home of her boyfriend.

The father of the complainant's boyfriend testified that at approximately 2:00 A.M. on October 7, 1982 he heard a scream from outside his home. He raced out the front door where he witnessed the complainant emerge from a car wearing a jacket. The complainant ran into his home and collapsed on the living room floor where his wife covered her with a blanket. According to the witness, the complainant was crying and hysterical, and her face was bruised and puffy. Suspecting that the complainant may have been the victim of a rape, the boyfriend's father called the police.

Two corroborating witnesses, police officers who responded to the call, testified to the complainant's hysterical and bruised condition and further indicated that the complainant was sitting in the middle of the living room floor in a fetal position, rocking back and forth. Thereafter, the complainant was transported by ambulance to a hospital where she was examined and treated. The physician noted that the complainant had swelling of the soft tissue over her right eye consistent with head trauma. Photographs of the complainant taken 36 hours after the attack and admitted into evidence without objection attested to her bruised appearance.

We find no merit to the defendant's first contention on

appeal that the People failed to prove his guilt beyond a reasonable doubt. Therefore, we refuse to disturb the jury verdict. The defendant's argument is predicated upon the lack of evidence to corroborate the complainant's testimony. Specifically, he focuses upon the medical testimony that no seminal fluid was found in the complainant's mouth or vagina and he challenges her credibility. The defendant attempts to exploit the inconsistencies in the complainant's testimony and the conflicting testimony elicited from the defense witnesses in urging this court to reverse his conviction. However, in so doing, the defendant asks this court to exceed the bounds of appellate review in a criminal case. The jury, having been presented with conflicting testimony, resolved any discrepancies therein against the defendant and chose to believe the complainant's testimony as corroborated by several witnesses. It is a well-settled principle of our system of jurisprudence that resolution of issues relating to the credibility of witnesses and the weight to be accorded evidence is the exclusive province of the jury and said determination may not be overturned lightly on appeal (see, e.g., People v Gruttola, 43 NY2d 116; People v Bauer, 113 AD2d 543; People v Kranitz, 104 AD2d 956). Our function as an appellate court is not to substitute our judgment for that of the jurors (see, People v Bauer, supra).

Bearing these principles in mind, our examination of the record reveals that the testimony adduced from several witnesses concerning the complainant's physical and emotional condition following the attack and the certainty of the complainant's identification of the defendant as her assailant, together with the jury's evaluation of the credibility of the witnesses and its determination with respect to any perceived inconsistencies in the record, cumulatively afford ample and sufficient legal basis to support the verdict beyond a reasonable doubt.

The defendant's argument that the proof adduced at the trial was deficient because there was a lack of objective verification is erroneous. Pursuant to Penal Law § 130.16, the complainant's testimony need not be corroborated (see, People v Mattison, 97 AD2d 621, 622). The defendant's reliance upon the laboratory results, which showed an absence of seminal fluid on the complainant's body, is unavailing. The record discloses a legitimate explanation for the results which was confirmed by a medical expert. The complainant testified that the defendant ejaculated in the car seat and on her leg, but she could not recall if he ejaculated in her mouth. She also

stated that she drank a glass of water at the hospital following the incident. The medical expert testified that if the complainant drank a glass of water within one hour of the swabbing of her mouth it is likely that the test would prove negative. He further testified that no swabbings were done of external portions of the body unless a victim called the examining physician's attention to the presence of semen on an external portion of the body. In any event, ejaculation is by no means a prerequisite to the commission of a rape which may occur "upon any penetration, however slight" (Penal Law § 130.00 [1]). Accordingly, the negative findings with respect to the presence of seminal fluid do not disprove the defendant's guilt of the crimes charged (see, People v Kinnard, 98 AD2d 845, 847, affd 62 NY2d 910).

The defendant further contends that prosecutorial misconduct and numerous evidentiary rulings which he brands as erroneous deprived him of a fair trial. The defendant's claim is predicated upon numerous alleged errors which are either unpreserved, have no merit or do not rise to such an egregious level as to warrant reversal of his conviction. We are convinced after conducting a careful and thorough review of the record on appeal that while the defendant did not receive a flawless trial, he received an eminently fair one. As Presiding Justice Mollen recognized in People v Harris (84 AD2d 63, 110, affd 57 NY2d 335, cert denied 460 US 1047), fairness in a trial proceeding is all that is required.

In view of the heinous nature of the crimes committed, we reject the defendant's contention that the sentence imposed by the trial court, which was within the statutory guidelines, was either unduly harsh or excessive. Accordingly, we choose not to disturb the trial court's discretion in this regard.

We have considered the defendant's remaining contentions, and find them to be without merit. Thompson, J. P., Niehoff, Lawrence and Kunzeman, JJ., concur.