■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

---

FANNIE D. CLARK, Appellant.—Levine, J. Appeal from a judgment of the County Court of Clinton County (Feinberg, J.), rendered July 26, 1984, upon a verdict convicting defendant of the crimes of forgery in the second degree (28 counts), grand larceny in the third degree (four counts) and petit larceny (22 counts).

For some 2½ years during the period 1979 to 1982, defendant was the bookkeeper for two family-owned enterprises operated by Edward Babbie and Jean Babbie, a general contracting business proprietorship and a swimming pool installation and supply sales corporation. Defendant was tried on charges of forging 27 checks of the two businesses, purportedly issued to the Babbies, by altering them and signing the Babbies' names as makers and/or indorsers, cashing the checks and retaining the proceeds. At the conclusion of the trial, the jury found defendant guilty of 28 counts of forgery in the second degree and 26 counts of petit or grand larceny in connection with 26 of the checks.

Defendant's main contention on appeal is that the evidence was legally insufficient to prove her guilt beyond a reasonable doubt. As to the forgery convictions, the Babbies each testified that their signatures on the various checks were not genuine and that defendant was never authorized by them to sign their names as either maker or indorser or to receive the proceeds of the checks. Jean Babbie further identified the handwriting of the signatures on many of the checks as that of defendant. Since she was fully familiar with defendant's handwriting from working closely with her on all of the office operations of the two businesses, it was not error to permit her to express an opinion on defendant's handwriting (see, Fisch, New York Evidence § 371, at 253 [2d ed]; Richardson, Evidence § 364 [o], at 337 [Prince 10th ed]). A State Police laboratory handwriting expert largely confirmed the Babbies' testimony. Based upon examination of the signatures on the checks and of numerous samples of the known handwriting of defendant and each of the Babbies, he opined that defendant had signed the name of Jean Babbie on the checks, once as the maker and seven times as indorser, and the name of Edward Babbie on the checks, once as the maker and 23 times as indorser. In the vast majority of instances where the expert did not corroborate the Babbies, he was not able to give a definitive opinion because of "the distorted and inconsistent manner in which [the signatures] have been executed". Through scientific instrumental examination, the expert found that the words "for deposit only" had been obliterated under a

genuine indorsement by Edward Babbie on one check, after which defendant apparently negotiated the check by adding by her own indorsement. The foregoing evidence was amply sufficient to establish all of the elements of forgery in the second degree *(cf. People v Piening,* 99 AD2d 583, 584).

Regarding the sufficiency of the evidence to support defendant's convictions of grand and petit larceny, since the proceeds of the checks were not established by accounting methods as shortages or actually traced to defendant, the proof was circumstantial. Viewing the evidence, as we must, in the light most favorable to the People *(see, People v Kennedy,* 47 NY2d 196, 203), it showed the following facts. Defendant worked in the same office area as Jean Babbie. She handled all bookkeeping entries and was generally given the responsibility of making out the checks for payroll and payment of the bills for the two businesses. Only the Babbies were authorized to sign checks. Since the office staff consisted solely of Jean Babbie and defendant, it was not uncommon for checks to be signed in blank and passed to defendant with instructions on making them out or leaving them with her in that form to be filled in at a later time if the Babbies were not going to be available to sign them when some payment became due. The only business checks legitimately and regularly issued to the Babbies were for their salaries or draw from the two businesses and for reimbursements for their occasional, personal expenditures on behalf of the businesses. Most frequently, the Babbies deposited all business checks issued to them directly into their personal banking accounts. Rarely were the checks cashed, and then only by the Babbies personally. Although defendant often physically made the deposits of checks issued to the Babbies, along with other business banking transactions, she was never given permission to cash the Babbies' checks or receive the proceeds thereof. Except in three instances, later to be discussed, all of the 27 checks were wholly cashed. Some of them bore defendant's genuine signature as final indorser. Of these, one was negotiated at a food store with whom the Babbies did not trade and which was remote from their home and place of business, but was located nearby defendant's residence. In only one instance during the relevant period did the Babbies ever authorize anyone to sign business checks, when their Florida vacation one year was unexpectedly extended because of engine failure of their automobile. And on that occasion, the authority to sign checks was given, not to defendant, but to the foreman of the Babbies' contracting business who had been a trusted employee of long standing.

Periodically during the relevant time frame, defendant was in precarious financial circumstances.

Clearly, the jury could have inferred from the foregoing both motive and opportunity on defendant's part. Defendant herself admitted indorsing the Babbies' name on each of the same instances positively identified by the prosecution's handwriting expert. She denied being the actual maker on any checks, and also denied signing any indorsements which the expert found were inconclusive. Her general explanation was that, on the various occasions when she signed the Babbies' names, she was about to go to make a deposit when it was discovered that one or both of the Babbies had neglected to indorse a check. Under these circumstances, she claimed, the Babbies had authorized her to sign the checks and accept the proceeds on their behalf. Clearly, the jury was entitled to reject this testimony in view of its obvious inconsistency with credible evidence that defendant had been the *maker* of some checks, that the signatures on others were made in a "distorted and inconsistent manner", and of the sheer volume of these transactions, all of which were unnatural and contrary to the Babbies' description of how they conducted their business and banking affairs.

The inference that defendant had a hand in the negotiation of these checks and took advantage of the Babbies' lax personal control over checkwriting and verifying procedures to enrich herself thus logically flows from the evidence presented and was not based upon unsupported assumptions drawn from evidence which was equivocal at best *(see, People v Kennedy,* 47 NY2d 196, 202, *supra).* Consequently, the evidence was legally sufficient to support the convictions, with one exception. As previously noted, although the defense was given full access to the bank records of all the Babbies' personal and business accounts, only three checks were found not to have been cashed in full but rather deposited in whole or in part in the Babbies' personal bank account. As to these three, the jury's verdict reduced one grand larceny charge to a conviction for petit larceny, reflecting the fact that a portion of the proceeds of one check was actually deposited, and acquitted defendant of all counts relating to a second check, since bank records established that the check was deposited in the Babbies' account in full. As to the third check, in the sum of $400, represented by counts Nos. 16 (forgery) and 138 (grand larceny) of the indictment, the proof was similarly conclusive that the entire check was deposited to the Babbies' account. Therefore, dismissal of those counts is necessary.

We have reviewed defendant's remaining assignments of error regarding County Court's disposition of defense motions and of the conduct of the trial, and find no basis for reversal. The sentence imposed* was well within the discretion of the court, but must be modified in only two respects. First, in view of our dismissal of count No. 138 of the indictment, charging grand larceny of $400, the sentence of restitution should be reduced accordingly. Additionally, since the forgeries were all committed prior to the effective date of the original enactment of Penal Law § 60.35 (L 1982, ch 55, §§ 81, 96, eff May 12, 1982), it was improper for the court to have imposed the mandatory surcharge provided thereunder (see, People v Santos, 105 AD2d 1135, 1136).

Judgment modified, on the law and the facts, by (1) reversing defendant's convictions of forgery in the second degree and grand larceny in the third degree under counts Nos. 16 and 138 of the indictment and dismissing said counts, (2) reducing defendant's sentence of restitution to $4,301.65, and (3) vacating the imposition of any mandatory surcharge, and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Mikoll and Levine, JJ., concur.

* Defendant was sentenced to 2⅓ to 7 years' imprisonment on each forgery conviction, 1⅓ to 4 years' imprisonment for each grand larceny conviction, and one year on each petit larceny conviction, with all sentences to run concurrently. County Court also fined defendant $5,000, imposed a mandatory surcharge of $2,100 and ordered her to pay restitution in the amount of $4,701.65.