■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD HERRING, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Doran, J.), rendered March 28, 1985, convicting him of manslaughter in the first degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Marlow, J.), of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

On January 3, 1983, Antonio Felice was shot in the back outside a dwelling in Port Chester, New York, where he lived with his wife. Four days later the Port Chester police obtained information from William Harrington, a defendant in an unrelated case, that implicated the defendant and his codefendants Terry Walker, Noel Rivera and Jerry Stanley in the

Felice homicide. Harrington named Walker and Rivera as having been hired by Stanley to commit a shooting, and the defendant as the driver of the getaway car. Harrington also led the police to the gun which ballistics tests proved was the weapon from which the fatal shots were fired. On the strength of this information, the police arrested Walker, Rivera and the defendant on January 7, 1983 for the Felice homicide.

At the time of arrest, Detective William Ek, the arresting officer, read the defendant his *Miranda* rights from a standardized card. The defendant was readvised of his rights upon his arrival at the Port Chester police headquarters. After indicating an understanding of his rights and a willingness to speak to the police officers without the presence of an attorney, and after signing a written waiver of his rights, the defendant admitted that he agreed to take part in "a sting for $1500" and that on being promised $100, he drove Rivera and Walker to a location where he believed Rivera and Walker would commit a robbery. He remained in the car while Walker and Rivera disappeared from sight and committed the deed. Upon their return, the defendant drove them to meet Stanley who paid Rivera and Walker and they in turn paid the defendant $100.

The defendant moved unsuccessfully to suppress the statements made by him to Detective Ek. On appeal, the defendant contends that his waiver of the right to the assistance of counsel was ineffective since the interrogating officer had constructive knowledge that he was represented by counsel on a prior pending charge. It was revealed at the suppression hearing that on October 8, 1982, the defendant had been arrested by Detective James Cahill, one of the officers who arrested the defendant for the instant offense, for traffic infractions and had impounded the defendant's vehicle. On the day of the defendant's arrest on the instant charges, that prior misdemeanor case was on the local court calendar. Thus, that case was still pending at the time of the defendant's interrogation by the police with respect to the instant charges.

We are not persuaded that the interrogating officer, Detective Ek, had constructive knowledge that the defendant had been arrested on misdemeanor traffic charges by the same police department 2½ months prior to the instant incident. It is the actual knowledge of a police officer of a pending charge on which the defendant is represented by counsel that precludes interrogation on the instant charges and renders ineffectual any purported waiver of the assistance of counsel made out of the attorney's presence *(People v Smith,* 54 NY2d

954; *People v Servidio,* 54 NY2d 951). Where the police do not actually know that earlier charges are still pending, constructive knowledge of a prior charge will not be imputed to the officers absent some measure of bad faith on their part *(People v Bertolo,* 65 NY2d 111, 120; *People v Fuschino,* 59 NY2d 91, 99).

Detective Ek and Lieutenant Gorski, who was also present during the defendant's interrogation, both denied that they had any knowledge of any other pending, unrelated charges against the defendant. Although Lieutenant Gorski admitted that he reviewed the daily activity sheets of the officers under his command, the hearing testimony revealed that hundreds of traffic summonses and misdemeanor cases are processed at the police station each year. According to Detective Cahill, he did not know that one of the charges upon which he had previously arrested the defendant was a misdemeanor. In any event, Detective Cahill believed that the prior, unrelated charges had been disposed of since the traffic citations were returnable on October 20, 1982, and at the time of arrest on the instant charges the defendant was driving the same vehicle which had been impounded in October and the vehicle bore new license plates. At some time after the defendant had completed his statement, and in the course of a conversation with Assistant District Attorney James McCarty, Detective Cahill revealed that he had previously arrested the defendant on traffic charges and that the fact that the defendant was driving the same vehicle when arrested on the instant charges aided in his apprehension. Assistant District Attorney McCarty claims that he learned of the defendant's prior, pending case from the Assistant District Attorney handling the calendar in the local Port Chester court on the date of the defendant's arrest. However, he did not receive that information until late in the afternoon of January 7, 1983, after the defendant had made his inculpatory statement. This information was derived in the course of a casual conversation between colleagues. The Assistant District Attorney with whom McCarty shared information regarding the Felice homicide was not connected to the Rackets Bureau to which McCarty was assigned.

Under the circumstances presented in this record, we find the police conducted their interrogation in good faith and with due regard for the defendant's rights. The prior pending charges were relatively minor and were, therefore, "less likely to have earned notoriety within a police department and * * * more likely to have been disposed of at an early date" *(People*

*v Bertolo, supra,* at 119). Thus, Detective Cahill "was entirely justified in entertaining a good-faith belief that the prior charges had been disposed of" *(People v Jacobs,* 119 AD2d 695, 697; *People v Dubois,* 140 AD2d 619, 622). Nor may it be said that Detective Cahill "deliberately overlooked the obvious or insulated the interrogating officers from actual knowledge of the pending unrelated charges, even though they were pending within the same * * * department, and were but two and one-half months old" *(People v Servidio, supra,* at 953). Since Detective Ek had neither actual nor constructive knowledge of the defendant's previous arrest or that he was represented by counsel on the pending charges, he had no duty to refrain from questioning the defendant *(People v Bertolo, supra; People v Woolard,* 124 AD2d 763, *lv denied* 69 NY2d 751). The interaction of the police officers and Assistant District Attorney McCarty with the Assistant District Attorney in the local court calendar part was not so close as to render their work a joint investigation *(People v Fuschino, supra,* at 98-99; *People v Woolard, supra,* at 764; *People v Beverly,* 104 AD2d 996). Accordingly, the defendant's motion to suppress his statement was properly denied.

The defendant further claims that the evidence adduced at trial was insufficient to establish his guilt as an accessory to the shooting since he only believed that his companions were going to commit a robbery. Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]).

Contrary to the defendant's assertions, the facts reveal more than mere presence at the scene and provide a sufficient basis for the jury's verdict since the conclusion of guilt is consistent with, and flows naturally from them *(People v Kennedy,* 47 NY2d 196, *rearg dismissed* 48 NY2d 635; *People v Turner,* 141 AD2d 878). The jury could have properly implied intent from the act of the shooting itself, the defendant's conduct, and the surrounding circumstances *(People v Turner, supra).* The defendant was a friend of the principals and assumed a purposeful and necessary role in the planned commission of the crime. After the shooting, he readily accepted his share of the proceeds. The circumstances of this case support the conclusion drawn by the jury that the defendant shared a " 'community of purpose' " with his companions *(People v Allah,* 71 NY2d 830, 832; *People v Whatley,* 69 NY2d 784; *cf.,*

*People v Cummings,* 131 AD2d 865). Thompson, J. P. Bracken, Kunzeman and Spatt, JJ., concur.