THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN JUSTICE, Appellant.

Fourth Department, December 26, 1991

## APPEARANCES OF COUNSEL

*John Nuchereno* for appellant.

*Kevin M. Dillon, District Attorney (J. Michael Marion* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

The facts of this tragic case are not in dispute and may be stated briefly. On September 16, 1985 at approximately 3:15 P.M. defendant, then 17 years of age and academically gifted, stabbed his brother to death as the brother returned home from school. Shortly thereafter, defendant fatally stabbed his mother when she returned home from work, then picked up his father from work in the family car and stabbed him to death as he entered the house. Defendant then made several unsuccessful attempts at suicide, left the house in the family car at approximately 7:15 P.M., drove the car at an excessive

rate of speed and crashed into a car operated by Wayne Haun, who was killed. Defendant sustained only minor injuries.

■■ Defendant was charged with four counts of murder in the second degree and four counts of criminal possession of a weapon in the fourth degree for the stabbing deaths of his brother, mother and father and the death of Mr. Haun. At trial defendant asserted the affirmative defense of insanity *(see,* Penal Law § 40.15). The jury found that defendant established the affirmative defense with respect to the deaths of his father and brother and found defendant not guilty by reason of mental disease or defect on those counts. The jury found defendant guilty of intentional murder in the death of his mother and guilty of depraved indifference murder in the death of Mr. Haun. Defendant's motion to set aside the verdict as inconsistent and repugnant was denied. Although the court's ruling was proper, the judgment should be reversed and a new trial granted because the court's charge was inadequate, misleading and confusing.

The record, viewed with respect to the jury charge *(see, People v Green,* 71 NY2d 1006, 1008; *People v Tucker,* 55 NY2d 1, 7, *rearg denied* 55 NY2d 1039), supports the trial court's conclusion that the verdict was not repugnant *(see, People v Goodfriend,* 64 NY2d 695, 697). The court repeatedly charged the jury that it must consider each count separately and report a separate verdict on each count. The jury was not charged that, if it accepted the affirmative defense on one count, it must accept it on all counts.

■ The jury verdict also is factually and legally sufficient *(see, People v Bleakley,* 69 NY2d 490, 495). Where, as here, there is conflicting expert testimony, the question of sanity is for the trier of fact, which has the right to accept or reject, in whole or in part, the opinion of any expert *(see, People v Wood,* 12 NY2d 69, 77). Thus, the jury was not bound to accept the opinion of defendant's expert that defendant suffered from a psychosis, most likely paranoid schizophrenia, and that defendant's actions were "part and parcel of the same psychotic situation." Moreover, where there is no serious flaw in the testimony of the People's expert, the jury verdict will not be disturbed *(see, People v Enchautegui,* 156 AD2d 461). Here, there was no "serious flaw" in the testimony of Dr. Barton, the People's expert.

Dr. Barton examined defendant for approximately two hours on March 15, 1986. He concluded that defendant had a

typical personality disorder and was somewhat egocentric, but was not psychotic or schizophrenic then, or at the time of the murders. Dr. Barton stressed that defendant did not experience hallucinations or delusions and was aware of what he was doing when the killings occurred. Dr. Barton opined that defendant murdered his brother to prevent him from calling the police, that he stabbed his father and brother out of love but killed his mother out of hate and that he showed remorse for killing Mr. Haun. The contrast between defendant's affection for his father and brother and hatred of his mother was a recurring feature of the expert testimony. That comports with defendant's explanation of his motives for the killings made to the hospital psychiatrist who examined him two days after the incidents. Dr. Barton explained that the altercation on the day before the murders between defendant and his mother, which was prompted by the mother's request that defendant wash the dishes, was "not abnormal, not unfamiliar with young adult men who naturally have to feel wanted" and may experience identity problems. That testimony, which specifically addressed defendant's state of mind with respect to each of the four victims, viewed in the light most favorable to the People *(see, People v Ford,* 66 NY2d 428, 437), was sufficient to support the jury verdict that defendant was guilty of the intentional murder of his mother and the depraved indifference murder of Mr. Haun.

■ The implicit premise of defendant's principal argument on appeal is that, in a case involving multiple related crimes, if an affirmative defense is established with respect to one crime, it necessarily must be established with respect to all crimes during a specific time period. Defendant cites no authority for that proposition. There may be instances involving affirmative defenses, other than insanity (e.g., entrapment, duress, renunciation) in which a defendant may establish the defense with respect to some but not all of the related crimes charged. For example, a defendant charged with multiple robberies or burglaries may be found to have acted under duress with respect to some but not all of the crimes. Similarly, a defendant charged with multiple drug offenses may be found to have been entrapped by the police with respect to some but not all of the offenses. Defendant cites no reason why the affirmative defense of insanity is not equally susceptible of partial, rather than total, success or failure. Although both the prosecutor and defense counsel may have tried the case on the all or nothing theory that defendant was either

sane or insane throughout the period in question, the jury was not obligated to accept that assumption and, on the contrary, was entitled to reject it when the court repeatedly charged the jury to consider each charge separately.

The case should be sent back for a new trial, however, because the court's charge was inadequate, confusing and misleading. All the examples the court used in its original charge and supplemental charge to illustrate application of the insanity defense involved an individual who suffered from delusions or hallucinations. However, both Dr. Tanay, defendant's expert, and Dr. Barton, the People's expert, acknowledged that defendant did not suffer from delusions or hallucinations. Therefore, the jury could have been misled to believe that defendant was not insane solely for that reason.

Moreover, the court failed to respond meaningfully to the jury's request for further instructions (see, CPL 310.30; *People v Malloy,* 55 NY2d 296, 302, *cert denied* 459 US 847). The jury asked "can defendant be mentally ill and still be criminally responsible?" The court responded "[t]he answer to that question is yes." Answering the question with a simple "yes", without further explanation of the elements of the affirmative defense, did nothing to alleviate the jury's confusion and instead added to it, because the next question the jury asked was whether they could find defendant "guilty" by reason of insanity. The court, again, did not explain the elements of the affirmative defense and told the jury only that there were three possible verdicts as to each count—guilty, not guilty, or not responsible because of mental disease or defect.

The dissent would reverse and dismiss the indictment on the theory that because defendant established the affirmative defense of mental disease or defect on one count of the indictment he could not be found guilty of murder on any other count. The dissent, however, cites no authority for that proposition and in our research we have not found any authority that would require such result. Fundamental fairness requires that the People should have the opportunity to present their evidence before another jury charged with the proper instructions concerning the evaluation of the conflicting evidence regarding the affirmative defense of mental disease or defect as it relates to the alleged murder of defendant's mother and Mr. Haun.

In sum, the improper examples charged by the court and the court's failure to respond meaningfully to the jury's questions require a new trial. In view of this disposition, we

need not address the other contentions raised. Accordingly, the judgment convicting defendant of the intentional murder of his mother and the depraved indifference murder of Mr. Haun and of the related weapon possession counts should be reversed and a new trial granted thereon.

DOERR, J. (dissenting). I concur in the majority's conclusion that the trial court's instructions to the jury were confusing. However, in my view, it is unnecessary to reach this issue because I conclude that the verdict is not supported by sufficient evidence. Consequently, I would reverse and dismiss those counts of the indictment upon which defendant was convicted.

The verdict, when viewed in relationship to the court's charge, is neither inconsistent nor repugnant *(see, People v Goodfriend,* 64 NY2d 695, 697). That is not to say that the verdict is proper. As the Court of Appeals stated in *People v Tucker* (55 NY2d 1, 8, n 5, *rearg denied* 55 NY2d 1039), that "is a problem of proof, not repugnancy." The verdict here is not supported by sufficient evidence.

When viewing a verdict to determine if it is supported by sufficient evidence, the reviewing court must "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" *(People v Bleakley,* 69 NY2d 490, 495; *see also, People v Thompson,* 72 NY2d 410, 413, *rearg denied* 73 NY2d 870; *Cohen v Hallmark Cards,* 45 NY2d 493, 499). The test was not met here because there was no evidence adduced at trial from which the jury could have inferred that defendant could be psychotic for two of these killings and not psychotic for two. I agree with the majority that it is theoretically possible for a jury to conclude that defendant met the burden of proof to sustain an affirmative defense for some crimes, but not for others. The critical difference in an insanity case is that the issue of defendant's sanity is necessarily based upon expert testimony. Here, Dr. Tanay testified that all of defendant's actions were "part and parcel of the same psychotic situation". The People presented no evidence on this issue, their expert having concluded that defendant was criminally responsible for all of his actions. Consequently, the jury's conclusion, that defendant could be psychotic, sane, psychotic, then sane again, within a four-hour period of time, is based upon sheer speculation.

I reject the majority's attempt to justify the verdict on the ground that the jury could freely choose to accept or reject all or part of each expert's testimony. Although this is true as a general proposition, the jury's decision to reject or accept testimony may "not involve any logical inconsistencies" *(People v Kennedy,* 47 NY2d 196, 204, *rearg dismissed* 48 NY2d 635). Here, the jury accepted Dr. Tanay's expert opinion that defendant was not responsible by reason of mental disease or defect as to two of the killings. It was logically inconsistent for the jury to convict defendant of murder in the second degree despite the complete absence of expert proof that defendant's mental condition could fluctuate so dramatically.

DENMAN, P. J., BALIO and LAWTON, JJ., concur with GREEN, J.; DOERR, J., dissents and votes to reverse in a separate opinion.

Judgment reversed, on the law, and new trial granted in accordance with an opinion by GREEN, J.