Bellacosa, J.
(dissenting). I respectfully dissent and vote to affirm the order of the Appellate Division upholding the convictions of the defendants.
This Court reverses defendants’ convictions for manslaughter in the second degree and endangering the welfare of a child and dismisses all criminal charges, despite the "evident culpability of one of the two appealing parties” (majority opn, at 611). This incongruous result in a complicated infanticide prosecution is most unfortunate and results, in my view, from misapplication of governing reviewability standards and appellate speculation.
The dispositive question on this appeal is whether the evidence presented to the jury by the People was sufficient to prove that both defendants were present when the so-called "active defendant” shook three-month-young Kwok-Wei to death, and that the "passive defendant” perceived and disregarded the risk of death. I agree that the test is "whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to find the elements of the crime to have been proven beyond a reasonable doubt” (majority opn, at 608; see also, People v Contes, 60 NY2d 620, 621). Where, as here, the evidence is circumstantial, the "conclusion of guilt must be consistent with and flow naturally from the proven facts” (People v Kennedy, 47 NY2d 196, 202). My point of departure from the majority’s analysis is whether the People are required to affirmatively and conclusively prove that the passive defendant was present at the precise moment of the fatal shaking (majority opn, at 609). Under this Court’s established rubrics of evidence and appellate review, it should be sufficient that the People presented evidence from which the critical conclusions could be rationally inferred beyond a reasonable doubt.
Since the People "prevailed at trial * * * we are required to *612 assume that the jury credited [their] witnesses” (People v Kennedy, supra, at 203). The People established that in order to cause death the shaking had to be prolonged, repeated and violent. While this testimony was contradicted by the defendants’ experts, who contended that a single shake could result in death, the acceptance or rejection of expert testimony in these circumstances is exclusively within the province of the jury. The People also established that following a violent, repeated shaking, an infant could suffer seizures or respiratory collapse, and would cry in a shrill, high-pitched tone, before lapsing into a coma. The victim’s crib was alongside the bed of the defendants "caretakers”. Thus, the inference that the relevant symptoms, in particular the shrill cry, must have been sensed by both defendants is not only reasonable, in this case it is virtually inescapable. At the very least, it is enough to pass appellate review, upon the affirmed portion of a verdict of guilt on a reduced homicide charge, as to the sufficiency of the evidence presented. All of the experts agreed that Kwok-Wei died prior to being placed in the baby carrier and that rigor mortis, which would have taken at least four hours to occur, had set in by 6:30 a.m. Again, the only reasonable inference was that Kwok-Wei died before 2:30 a.m. when, by defendants’ own admissions, they were both awake and "tending” to the infant. I conclude that no reasonable, innocent scenario is legally sustainable without resorting to appellate speculation.
The Court’s statement that the defendants’ statements are "simply too tenuous a thread to support the weight of the all-important inference of knowledge on the part of the 'passive’ defendant” (majority opn, at 609) is puzzling. The defendants made consistent statements to Kwok-Wei’s parents, the Emergency Medical Services personnel and hospital personnel, that they both tended to Kwok-Wei in the living room during the entire 2 Vi hours that he was crying and they both put him to bed when he stopped crying. The jury could justifiably have inferred from their own joint activity statements that they were "continuously together” (majority opn, at 609) during any or all of the critical events and time periods. Indeed, such an inference of joint conduct is less speculative than the Court’s rumination that "it seems more likely than not that at least one of them would have left the room * * * at some point during the relevant period” (majority opn, at 609). This speculation contradicts the unequivocal import of the defendants’ consistent admissions.
*613 " '[I]n the end, it is a question whether common human experience would lead’ ” reasonable persons, putting their minds to it, " 'to reject or accept the inferences asserted for the established facts’ ” (People v Kennedy, 47 NY2d, at 203, supra, quoting People v Wachowicz, 22 NY2d 369, 372). The conclusion reached by the jury that the shaking had to be violent and prolonged and, thus, did not occur while the "passive” defendant was absent, distracted or unaware within the contemplation of the penal statutes, falls within the "common human experience” of reasonable persons and, therefore, should not be disturbed by this Court of last resort.
I believe that the lesser included homicide and the endangerment crimes for which these defendants stand convicted should be sustained.
Chief Judge Kaye and Judges Simons, Hancock, Jr., and Smith concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in another opinion.
Order reversed, etc.