■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER LE BLANC, Appellant. [604 NYS2d 329] —Yesawich Jr., J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered February 27, 1992, convicting defendant following a nonjury trial of two counts of the crime of assault in the second degree.

On the morning of February 23, 1988, defendant's wife

observed that their four-month old son, Rod, who had been crying most of the night, had a swollen thigh and appeared to be in pain. When she was able to take the child to a doctor later that day, it was discovered that his femur was fractured, and also that he had a fracture of the skull, an older, healing rib fracture, several bruises, and a cut on his mouth. The treating physician reported this as a possible case of child abuse, and after investigation, defendant was indicted and charged with three counts of assault in the second degree. Following a bench trial, defendant was convicted of two of the counts, those relating to the thigh and skull fractures. Sentenced to two concurrent terms of incarceration of 1 to 4 years, defendant appeals.

Defendant initially asserts that the verdict was against the weight of the evidence, and that the People did not sustain their burden of proving his guilt beyond a reasonable doubt. We find no merit to these contentions.

Christina Le Blanc, defendant's wife at the time of the incident, testified that on the afternoon of February 22, 1988, defendant began swearing at Rod, telling him to stop crying, and then held Rod by the arms and shook him "pretty fast", causing his head to move back and forth. She also testified that defendant dropped—later she used the words "slammed" and "banged"—the infant on the floor, began "exercising" his legs by "twisting them and pushing them up close to his body", sat on the child, placing some of his 200-pound weight on Rod's belly, and slapped him hard in the face with both hands.

The People also called two of Rod's treating physicians, one of whom testified that the thigh fracture was between 12 and 48 hours old when he examined Rod on the evening of February 23, 1988, that it was "perfectly consistent" with the description of defendant's manipulation of the child's legs given to him at the time by Le Blanc, and that it could not have been caused by a fall. The skull fracture he believed to be approximately five days old at the time of its discovery on February 23, indicating that it was not caused by defendant's battering on the previous day. There was medical testimony, however, that this fracture could be caused by slapping the child roughly or banging his head into a hard surface, such as the floor, both of which are consistent with the type of conduct displayed by defendant on February 22, and further that it was "pretty unlikely" that such an injury would be caused by a fall. Even if defendant's statements are considered too vague to constitute direct evidence of his guilt, this testimony, along

with Le Blanc's, that she had done nothing to harm the child, defendant's admission to a social services employee that "he had a bad temper and that he could have done all of those things to the baby, but he just couldn't remember", and the undisputed fact that the child had not been left with anyone other than his parents, provides sufficient circumstantial evidence to establish, "to a moral certainty", that defendant caused both the skull fracture and the thigh fracture, even if that standard of proof was required (see, e.g., *People v Kennedy*, 47 NY2d 196, 202).

Given the age of the child, defendant's conduct as recounted by Le Blanc and the nature of the injuries caused thereby, the evidence is also sufficient to establish both the requisite intent (see, *People v Durkin*, 132 AD2d 668, 669, *lv denied* 70 NY2d 799; *People v Hildenbrandt*, 125 AD2d 819, 820, *lv denied* 69 NY2d 881), and that the injuries were "serious" as defined by Penal Law § 10.00 (10).

Defendant also contends that the oral statement he gave to Detective Sergeant John Manning, in which he admitted having "done wrong" to his child, should have been suppressed on the ground that it was taken pursuant to an ineffective waiver of his right to counsel, and thus in violation of that right. There is no cognizable legal foundation for this assertion, which is based on the fact that defendant had appeared, and requested that counsel be assigned to him, in a related Family Court proceeding. Inasmuch as child protective proceedings under Family Court Act article 10 are essentially civil in nature, the filing of a petition commencing such a proceeding does not, in itself, trigger the right to counsel in a related criminal action (see, *People v Smith*, 62 NY2d 306, 309). Recognizing this, defendant asserts that his right to counsel attached indelibly not by virtue of the commencement of the Family Court proceeding, but because he had actually requested counsel in connection therewith. However, as noted in *People v West* (81 NY2d 370), that right does not attach where—as here—a suspect, not in custody, has requested an attorney, but has not actually retained one (*supra*, at 375, n 1). The mere fact that the attorney in question was to be assigned by Family Court, rather than privately retained, does not change the operative facts, namely that there was no coercive power involved, as there would be if defendant was in custody, nor was there an existing attorney-client relationship. For these reasons, defendant's explicit, voluntary waiver of his right to counsel prior to the interrogation was in all respects effective, and his statement was properly admitted.

Defendant's other arguments have not been preserved for appellate review, nor is their consideration warranted in the interest of justice.

Weiss, P. J., Mikoll, Crew III and Cardona, JJ., concur. Ordered that the judgment is affirmed.