█ In the Matter of MICHAEL D., a Person Alleged to be a Juvenile Delinquent, Appellant. — Order of disposition of the Family Court, Bronx County (Judith Sheindlin, J., at disposition; Stanley H. Nason, J., at fact finding), entered on November 1, 1983, which adjudicated appellant a juvenile delinquent and placed him on probation for 18 months, is affirmed.

At the fact-finding hearing which was conducted in the instant matter, the complainant, Angel Matos, who assists an apartment building superintendent in caring for the premises, testified as follows: On the evening of February 26, 1983 he was walking down the stairs in the company of the landlord and superintendent when he observed appellant herein and two other boys, identified as Jose and Rubin Torres, drinking and urinating in the hallway. He directed the three youths to leave the building, but they responded with a string of curses and profanity. The complainant then proceeded outside with appellant trailing approximately 15 feet behind. Once on the street, the complainant was struck on the legs and wrist by Jose Torres, who was wielding a cane. He heard Jose declare, "Hit him with the bottle", and immediately thereafter he was hit on the head

with a bottle. Turning his face toward the spot where the bottle had come from, the complainant noticed Rubin and appellant standing together behind him.

Although the evidence against appellant was circumstantial in nature, a rational trier of fact could have found beyond a reasonable doubt that while acting in concert with the Torres brothers, appellant participated in the assault upon the complainant. The complainant identified him as one of the three boys who were drinking and urinating in the hall, who cursed at him when he demanded that they leave and who followed him out of the building, still swearing. Appellant, along with Rubin Torres, stood behind the complainant as Jose struck the latter with a cane. Either he or Rubin hit the complainant on the head with a bottle when Jose cried out, "Hit him with the bottle." Viewing the evidence in the light most favorable to the prosecution, as we are required to do, the proof was sufficient to support the conclusion that appellant committed acts which, if done by an adult, would constitute the crime of assault in the second degree. (*See, People v Malizia,* 62 NY2d 755; *People v Kennedy,* 47 NY2d 196.) In that connection, it was for the court, as the sole trier of fact, to make a determination concerning the credibility of witnesses and to resolve disputed questions of fact. (*People v Gruttola,* 43 NY2d 116.) The decision of a trial judge, sitting as the trier of fact, is to be accorded the same weight as that given to a jury verdict. (*People v Carter,* 63 NY2d 530.) Moreover, in the course of evaluating the credibility of the various witnesses before it, a trier of fact is warranted in disregarding statements made by those individuals whom it considers unworthy of belief. There is certainly no indication in the record that by expressing its doubt about the veracity of appellant's account, the court shifted the burden of proof from the prosecution to him. Concur — Sullivan, J. P., Milonas and Kassal, JJ.

Asch, J., dissents in a memorandum as follows: Michael D. is hardly Little Lord Fauntleroy, but under our system of law he cannot be found guilty simply because of his deportment or his friends. In my judgment, the evidence of respondent's participation in the assault was insufficient to establish his guilt, mandating that we reverse the Family Court and dismiss the petition. Accordingly, I dissent.

A juvenile delinquency petition was filed against the respondent, Michael D. appellant herein, age 15 at the time, alleging that he and two others intentionally caused physical injury to Angel Matos by means of a cane and a glass bottle.

A fact-finding hearing was held in the Family Court, where Angel Matos testified that he assists the superintendent in

cleaning an apartment building. On the date in question, Matos, accompanied by the landlord and superintendent, approached the lobby and saw the respondent Michael D. and two brothers, Jose and Rubin Torres, drinking and urinating in the hallway. Jose Torres was carrying a walking cane. Matos told them to leave the building because he had just finished mopping and sweeping the floor. Michael and the Torres brothers responded with profanity and left the building.

When Matos and the two other men left the building, Jose Torres repeatedly hit Matos with the cane. Matos was struck about the ankles, knees and legs. He was also hit on the wrist as he tried to protect his head. During the attack, Matos saw Michael and Rubin Torres standing together and he heard Jose Torres say, "[h]it him with the bottle." He was then struck in the head with a bottle and sustained several lacerations to the left side of his face.

Upon arriving at the scene, Police Officer Marquez observed Matos standing on the sidewalk, limping, and bleeding from the face. Matos first identified the Torres brothers as his assailants. As Michael was crossing the street, Matos told Marquez, "he's also one of them", and Michael was then arrested.

Respondent testified in his own behalf. Michael stated that at the time in question, he was standing in the hallway of the premises outside the apartment of his friend, Rico Ortiz. He and Ortiz had planned to go to the movies and Ortiz had told him to wait in the hallway. After several minutes, the Torres brothers entered the hallway, drinking a bottle of beer. Michael had met them several days earlier at the neighborhood basketball court, where he argued with one of the brothers. Although Michael originally testified that the brothers were angry with him and did not speak to him, he later stated that they asked if he wanted some beer and if he wanted to go to a party with them. Respondent refused both offers.

When Matos appeared in the hallway, he began speaking in Spanish and cursing in English. He also said, "leave, leave" in English. Michael replied that he did not understand Spanish and that he was waiting for his friend, Rico. When the superintendent, who understood English, translated Michael's reply into Spanish, Matos shook his head in the affirmative. Michael interpreted this to mean he could remain in the hallway.

Several minutes after the hallway encounter, Rico opened the apartment door and told Michael to wait outside because he was not yet ready to leave. Michael returned to the sidewalk and sat on a car located about 10 cars to the left of the entrance to the building. As he exited the building, Michael saw the Torres

brothers, Matos, the superintendent and another man arguing in Spanish. When he was at the car, Michael turned around upon hearing the sound of broken glass. He saw Jose hit Matos with a cane, and he observed that Matos was bleeding from the face.

Michael then began to walk away from the scene because he "didn't have nothing [*sic*] to do with it." At that point, he was taken into custody.

In rebuttal, Matos testified that during the assault he saw Michael standing one car behind him. He estimated the distance to be approximately 15 feet.

The court dismissed the allegation that respondent possessed a weapon but found that Michael acted in concert with the Torreses in intentionally causing physical injury to Matos, and also found that respondent Michael's "lack of credibility" supported the proof submitted as to respondent's guilt of assault in the second degree.

The circumstantial evidence of respondent's participation in the assault was insufficient to support a finding of guilt.

"[I]n order for the conviction to stand, the facts in this case, viewing them most favorably to the People, must be inconsistent with defendant's innocence and must also exclude to a moral certainty every other reasonable hypothesis" (*People v Cleague,* 22 NY2d 363, 366).

Stated otherwise, "the conclusion of guilt must be consistent with and flow naturally from the proven facts, and that those facts viewed as a whole must exclude 'to a moral certainty' every conclusion other than guilt [citations omitted]" (*People v Kennedy,* 47 NY2d 196, 202).

Penal Law § 20.00 provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct."

The evidence presented against appellant was insufficient to support a finding that he participated in the assault. Matos' testimony merely places him in the hallway with the Torres brothers and in proximity to the altercation on the sidewalk. There is no evidence that he possessed or wielded either of the dangerous instruments. Nor is there any indication that he acted in a manner that would establish "in-concert" activity as defined in Penal Law § 20.00. Thus, the prosecutor's evidence

was not inconsistent with innocence nor does it exclude to a moral certainty every conclusion other than guilt.

The hearing court also impermissibly shifted the burden of proof and denied appellant due process of law by using its disbelief of appellant's testimony as corroboration of the People's case without independent proof of fabrication (*People v Abdul-Malik*, 61 AD2d 657). Its statement that Michael's lack of credibility supported the proof submitted as to respondent's guilt of assault in the second degree evidenced this shift of the burden.

Accordingly, the determination of the Family Court at the fact-finding hearing should be reversed and the petition dismissed.