■ In the Matter of Y. K., a Person Alleged to be a Juvenile Delinquent, Appellant. [624 NYS2d 243]—In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the appeal is from an order of disposition of the Family Court, Kings County (Lubow, J.), dated March 17, 1993, which, upon a fact-finding order of the same court, dated February 3, 1993, made after a hearing, finding that the appellant had committed acts which, if committed by an adult, would have constituted the crimes of assault in the second degree, assault in the third degree, and criminal possession of a weapon in the fourth degree, adjudged her to be a juvenile delinquent, and granted her a conditional discharge for 12 months, requiring her, *inter alia,* to attend school regularly and to cooperate with any counseling referrals made by the Probation Department. The appeal brings up for review the fact-finding order dated February 3, 1993.

Ordered that the order of disposition is reversed, without costs or disbursements, the petition is denied, and the proceeding is dismissed.

While on her way home from school, the appellant was the innocent victim of a gang of assailants. The petition which was filed against her arose from her attempt to defend herself against those assailants, during the course of which she injured the complainant.

At the fact-finding hearing in this case, eyewitness Stacy S. testified on behalf of the Presentment Agency. She stated that she was walking with her friend, Lauren, and they were with a group of seven to ten boys and girls who were looking for a fight. One member of the group, a girl called Precious, saw the appellant and said, "Let's go jump that girl". The appellant did nothing to provoke the attack. Precious jumped the appellant and two other girls joined in the assault. The appellant then pulled out a knife and began "swinging it". Stacy further testified that the appellant did not move toward the complainant, Euphorania R., but that Euphorania moved toward the appellant and grabbed the knife. At that point, the appellant stabbed Euphorania. All during this time, Precious and the

other girls were shouting, "set it—set it," and were hitting and possibly kicking the appellant, as well.

The 12 year old complainant, Euphorania, testified that on May 7, 1992, she was walking home from school with her friend, Stacy. The girls were walking near another group of girls, including Precious, Kim, Dee-Dee, Juanita, and Krevanda, who were talking about jumping the appellant. Precious ran up to the appellant and hit her on the back of the head. The appellant kept walking and then Kim ran up and began hitting her. The other girls were shouting, "get her," and "hit her some more". Euphorania claimed that the appellant then approached her and hit her and they began to fight. The two girls fell to the ground, with Euphorania on top of the appellant. While on the ground, Euphorania hit the appellant on the face and arms, as Euphorania's friends stood close-by encouraging her. The appellant then took out a knife and stabbed Euphorania in her head and back. Euphorania grabbed the knife, cutting two of her fingers. At that point, the police arrived.

The 13 year old appellant testified on her own behalf. She stated that on May 7, 1992, she was walking from school to the train station with two friends. Several girls, in a group of about 10 to 15 boys and girls, started screaming, "who does she think she is,"—the appellant was a student of special classes for talented and gifted children—and "that bitch needs to get hers". The appellant kept walking and the group began screaming "set on her". Precious ran up and punched the appellant in the back of the head and ran back to her friends. The appellant's two friends then fled toward the train station. The appellant decided not to run into the train station afraid that the gang could throw her onto the train tracks. The appellant noticed a metal object on the ground, which she picked up and recognized as a knife. She put the knife into her jacket and kept walking. Another girl, Kim, came up and hit her. The appellant turned around and everybody "rushed" her. She defended herself against Euphorania who was hitting her. As Euphorania and the appellant were fighting, other members of the group were hitting and punching the appellant. At one point, someone pulled the appellant and she fell down with Euphorania on top of her. Euphorania was punching the appellant in the face and chest, and the remainder of her assailants were kicking and punching her. After being beaten for about five to eight minutes, and being kicked in the head, the appellant "couldn't take it anymore" and removed

the knife from her jacket. She stabbed Euphorania while they were fighting. The police eventually broke up the fight.

The court sustained three of the four counts of the petition, finding that the appellant had committed acts which, if committed by an adult, would have constituted the crimes of assault in the second degree, assault in the third degree, and criminal possession of a weapon in the fourth degree. Although the court found that the appellant "was terrified under the circumstances of the other girls attacking her", "was in fear", and was "assaulted * * * without provocation", the court rejected the appellant's justification defense, finding that the appellant had an opportunity to retreat to the subway station. We now reverse.

As to a justification defense, Penal Law § 35.15 (2) (a) provides that an individual may, by the use of deadly physical force, defend herself where she "reasonably believes that * * * [another] person is using or about to use deadly physical force", and she cannot, with complete safety, retreat. Where a justification defense is interposed, the People must prove its absence to the same degree as any element of the crimes charged *(People v McManus,* 67 NY2d 541, 546-547). Here, the court held that it did not "by *[sic]"* the appellant's justification defense, and thus, the court improperly shifted the burden of proof to the appellant.

The court also found that the appellant's failure to retreat to the subway station with her friends was not "objectively reasonable". The court applied an improper standard. In determining whether a defendant's conduct was justified under Penal Law § 35.15, a trier of fact must consider both subjective and objective factors *(see, People v Goetz,* 68 NY2d 96). In any event, under the facts presented we disagree with the court that the appellant's failure to flee to the train station was not objectively reasonable. At the time the appellant stabbed Euphorania, the appellant was lying on the ground with Euphorania on top of her. They were surrounded by a crowd encouraging Euphorania's acts and punching and kicking the appellant. This was not a situation from which the appellant could flee. The dissent states that deadly physical force was not warranted in these circumstances because the appellant never specifically verbalized that she believed her life was in peril or that she was about to be seriously injured. This interpretation is not warranted by the record. It is uncontroverted that the appellant was the blameless target of a vicious attack by a hostile group, and her attempt to defend herself from them cannot be a basis upon which to hold her

responsible for the consequences of that unprovoked onslaught.

In sum, we find that the Presentment Agency failed to meet its burden to disprove the appellant's justification defense beyond a reasonable doubt and that the petition against the appellant must be denied in its entirety and the proceeding must be dismissed. Rosenblatt, Altman and Hart, JJ., concur.

Sullivan, J. P., dissents and votes to affirm the order of disposition appealed from, in the following memorandum with which Friedmann, J., concurs: I discern no basis in the record for disturbing the Family Court's determination that the Presentment Agency disproved the appellant's justification defense and established the appellant's guilt beyond a reasonable doubt. Therefore, I would affirm the order of disposition.

The hearing testimony demonstrated that the complainant, a young girl named Euphorania, and a friend were walking home from school near a group of several other young girls. At the same time, the appellant and two companions, female students at I.S. 390, were walking to the subway station on their way home from school. One member of the group, a girl named Precious, approached the appellant, struck her in the back of the head, and then returned to the group as some of the girls shouted derogatory remarks at the appellant. The appellant's two companions, perceiving an escalating risk of danger, ran into the train station, which was only 30 to 40 feet away. However, the appellant, who testified that she too perceived an impending confrontation, did not accompany her friends but instead decided to arm herself with a knife which she claimed to have fortuitously discovered on the ground only moments after being struck. According to the appellant, she believed that if she had entered the train station she might have been thrown on the tracks by the hostile group. A second girl, named Kim, then approached the appellant and struck her. The appellant turned around and immediately became involved in a fistfight not with one of the girls who struck her, but with the complainant, who had not taken part in any of the physical or verbal abuse of the appellant. Indeed, Euphorania testified, and the Family Court expressly found, that the appellant struck Euphorania first. The two girls then either fell or were pulled to the ground, with Euphorania landing on top of the appellant. Euphorania stated that as the two girls fought on the ground, the group watched and cheered but did not participate. Furthermore, she stated that during the fight, the appellant brandished a knife and stabbed her repeatedly. However, the appellant claimed that the group

hit and kicked her as she fought with Euphorania and that she stabbed Euphorania in the head and back and slashed her hand only after one member of the group kicked the appellant in the head. The appellant testified that she stabbed Euphorania "[b]ecause I couldn't take it any more and because everybody was hitting me and kicking me and I thought they were going to hurt me". The appellant also claimed that she felt she had no other way out of the altercation. Significantly, the appellant admitted that Euphorania did not have a knife, and she never testified that she believed her life was in danger or that she would be seriously injured. In addition to the multiple stab wounds which she received, Euphorania suffered a collapsed lung and was hospitalized for an extended period. Conversely, notwithstanding her claim that she was beaten by a large group of people for a period of five to eight minutes, the appellant did not produce any evidence indicating that she sought medical attention after the incident or even that she suffered any appreciable injuries as a result of the altercation.

The Family Court determined that the appellant used deadly physical force in stabbing Euphorania, and that the use of such force was not legally justified under the circumstances. Contrary to the suggestion of the majority, the court did not base its determination solely on the appellant's failure to retreat. Indeed, the court determined that while the appellant had been assaulted without provocation by some of the girls and that she may have been terrified, there was no basis upon which she could have reasonably believed that Euphorania was one of her attackers. Moreover, the court found that the appellant unjustifiably began and continued a fistfight with Euphorania and then unreasonably introduced a knife into this fight, thereby inflicting substantial physical injuries upon Euphorania. The court also found that the appellant's excuse for failing to retreat to the safety of the train station with her friends was objectively unreasonable. Therefore, the Family Court determined that the appellant had committed acts which, if committed by an adult, would have constituted the crimes of assault in the second degree, assault in the third degree, and criminal possession of a weapon in the fourth degree. I agree with the Family Court's reasoning.

At the outset, the appellant's contentions that the court improperly shifted the burden of proof on the justification defense to her and that it erroneously applied an objective standard in evaluating that defense are unpreserved for appellate review, inasmuch as neither of these arguments was raised in the Family Court (see, CPL 470.05 [2]; see generally,

*People v Allen,* 69 NY2d 915). In any event, these claims are without merit. While the court did state that it did not "by *[sic]"* the appellant's defense, this remark clearly was intended to indicate the court's finding that the presentment agency had adequately disproved the defense. Indeed, shortly before rendering its fact-finding determination, the court expressly acknowledged the presentment agency's obligation to disprove the justification defense beyond a reasonable doubt. Hence, the Family Court did not impermissibly shift the burden of proof to the appellant on this issue. Likewise, the court did not apply an erroneous standard in evaluating the evidence pertaining to the justification defense. It is well settled that in determining whether a proffered defense of justification has been disproved beyond a reasonable doubt, the factfinder must first ascertain whether the defendant actually believed that the use of deadly physical force was necessary and, if so, the factfinder must then determine whether that belief was reasonable. An inquiry into the reasonableness of the defendant's belief and resulting conduct must include a consideration of both subjective and objective factors as well as the attendant circumstances *(see, People v Wesley,* 76 NY2d 555; *People v Goetz,* 68 NY2d 96). Contrary to the conclusion of the majority, the Family Court did not rely solely upon objective factors in reaching its determination, but also expressly took into account the appellant's age, physical and mental maturity, intelligence, and the circumstances in which she found herself. Accordingly, the Family Court analyzed the justification evidence in a legally appropriate manner.

Turning to the evidence in this case, and viewing that evidence in the light most favorable to the presentment agency *(see, Matter of Umar C.,* 205 AD2d 770; *People v Alvarez,* 201 AD2d 487), I find that it is legally sufficient to support the Family Court's determination. Moreover, the court's determination is not against the weight of the credible evidence *(see,* CPL 470.15 [5]). Pursuant to Penal Law § 35.15 (2) (a), she could not use deadly physical force against Euphorania unless she reasonably believed that Euphorania was about to use deadly physical force against her and she could not retreat with complete safety *(see generally, People v Candelaria,* 206 AD2d 385; *People v Richardson,* 155 AD2d 488). Fundamentally, there is no evidence in the record that the appellant *subjectively* believed that deadly physical force was being or was about to be used against her. While the appellant testified that she thought the group was going to

hurt her, *she never stated that she believed her life was in peril or that she was about to be seriously injured (see, e.g., People v Collice,* 41 NY2d 906; *People v Brown,* 187 AD2d 312). Such testimony was essential to the appellant's claim that she was justified in using deadly physical force. Hence, the absence of testimony regarding a subjective belief on the part of the appellant that her life was in danger is sufficient, in and of itself, to render the justification defense unavailing in this case *(see generally, People v Wesley, supra; People v Goetz, supra).*

In any event, even if it is assumed that the appellant entertained such a subjective belief (an assumption for which there is no support in her testimony), that belief would not have been *reasonable* under the facts determined by the Family Court. It is a familiar principle that the Family Court's factual findings and credibility determinations are entitled to great weight on appeal, and its ultimate conclusion is accorded the same deference as a jury verdict *(see, Matter of Bernard J.,* 171 AD2d 794; *Matter of Jamal V.,* 159 AD2d 507; *Matter of Michael D.,* 109 AD2d 633, *affd* 66 NY2d 843). Unlike the majority, I cannot simply disregard this principle and reject the court's findings and conclusions, which are amply supported by the record. As the court found, Euphorania took no part in verbally abusing or physically assaulting the appellant, and only engaged in a fistfight with the appellant after the appellant first struck her. Moreover, at no point did Euphorania inflict a serious injury upon the appellant or, as readily conceded by the appellant, threaten the use of a weapon against her. Additionally, Euphorania testified that no other members of the group struck or kicked the appellant while they fought. Under these circumstances, the Family Court properly found that the appellant could not have reasonably believed that the unarmed Euphorania was threatening the use of deadly physical force against her and, therefore, that her act of stabbing Euphorania was clearly unjustified *(see, e.g., People v Alvarez, supra; People v King,* 186 AD2d 683; *People v Varela,* 164 AD2d 924; *People v Henegan,* 150 AD2d 606). Indeed, even if the Family Court had credited (as the majority now does) the appellant's claim that other youths were kicking and hitting her as she fought with Euphorania, the evidence would still support the court's determination that the justification defense was disproved beyond a reasonable doubt because the appellant expressed no subjective belief that her life was in danger. Furthermore, it is clear that the appellant directed her use of deadly physical force against

Euphorania rather than other members of the group, even though Euphorania was unarmed and never did anything more than engage in a fistfight which the appellant initiated. Accordingly, the appellant's introduction of a knife into the fistfight clearly constituted the use of excessive physical force under the circumstances *(see generally, People v King, supra; People v Varela, supra; People v Reyes,* 116 AD2d 602).

Since the record amply supports the Family Court's determination that the appellant used deadly physical force against Euphorania without justification, the issue of the appellant's failure to retreat need not even be considered. In any event, I do not share the majority's view that the Family Court erred in its additional determination that the appellant acted unreasonably in failing to retreat. While it may be true that the appellant was unable to retreat at the time she was actually fighting on the ground with Euphorania, the record unequivocally demonstrates that the appellant could have retreated to the train station at the beginning of the incident and thereby avoided the use of deadly physical force altogether. In fact, the appellant herself testified that her two friends swiftly retreated into the train station with complete safety at the first sign of trouble. However, despite her awareness of the impending confrontation, the appellant elected to arm herself with a knife and to stand her ground. Although the appellant testified that she thought she might be thrown onto the tracks by the hostile group if she entered the train station, there is no evidence to suggest that this belief was rational. For example, the appellant did not testify that any members of the group had threatened her life or that the train station was unmanned and would not afford her adequate protection in the event she was pursued by the others. Moreover, given the facts that the train station was only a short distance away and the appellant's companions had already safely fled into it, the Family Court properly determined that the appellant acted unreasonably under the circumstances in failing to comply with her legal obligation to retreat and to thereby avoid her subsequent use of deadly physical force *(see generally, People v Flores,* 191 AD2d 306; *People v Richardson, supra; People v White,* 162 AD2d 297; *People v Thompson,* 125 AD2d 511; *People v Reyes, supra).*

I am at a loss to understand how or why the majority rejects out of hand the findings of the Family Court; findings which are entitled to great weight and which were made with the benefit of seeing and hearing the witnesses (which benefit we do not have). Of equal concern is the majority's gratuitous

inference that the other children (but not the victim) shouted obscenities at and struck the appellant because she was "a student of special classes for talented or gifted children". Search as one may in this record, evidence of such a motive is not to be found. At no time did these girls refer to the appellant's academic status, nor did the Family Court infer this as the motive for their animosity. Only the majority takes this position, and it does so without any basis or foundation in the evidence. Likewise, the appellant's academic standing clearly does not afford her any greater rights with respect to the defense of justification.

Accordingly, the Family Court's determination should not be disturbed, inasmuch as it is fully supported by legally sufficient proof and by the weight of the evidence.