■ The People of the State of New York, Respondent, v Richard Powers, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Broome County (Monserrate, J.), rendered April 15, 1987, upon a verdict convicting defendant of the crimes of burglary in the third degree, criminal possession of a weapon in the third degree (four counts) and conspiracy in the fourth degree.

The questions presented on this appeal are: (1) whether County Court properly allowed into evidence the sawed-off shotgun seized pursuant to a search warrant from a garaged Mazda automobile, (2) whether there was sufficient circumstantial evidence to sustain defendant's conviction for possession of the shotgun, (3) whether County Court properly instructed the jury concerning accomplice testimony, and (4) whether the sentence was within the court's discretion. In our

view the questions should be answered in the affirmative and the judgment affirmed.

On the evening of September 26, 1986, Fran Paddleford and her friend, Vicky Deyo, met Frank Powers and his friend, Kenneth Horton, at a parking ramp in the City of Binghamton, Broome County. Paddleford and Powers returned to her apartment in the Village of Johnson City, Broome County. Powers slept on the couch that night and the next day Powers and Horton "moved in" to the apartment, residing there until November 1, 1986. Sherry Florence, who was Horton's girlfriend, defendant, who was Powers' brother, and defendant's friend, Jeff Van Norman, became regular visitors at the apartment.

On their initial visit in the first week of October 1986, defendant and Van Norman brought with them a blue gym or duffel bag containing a 12-gauge sawed-off shotgun nicknamed "Shorty". This shotgun was stored in Paddleford's bedroom closet or in the trunk or front seat of Powers' brown Pontiac automobile until November 1, 1986, when Paddleford asked Powers to leave her apartment for good. He did so and left with the sawed-off shotgun.

On November 8, 1986, Paddleford informed Detective Mike Nowak of the Johnson City Police Department of apparent burglaries and other illegal activity that she learned Powers, Van Norman, defendant and others were involved in through conversations between defendant and his friends and observations she made at her apartment during the month of October 1986. Police investigation and the reports of other visitors at Paddleford's apartment confirmed Paddleford's disclosures and led to the issuance and execution of search warrants and defendant's arrest. On the evening of November 8, 1986, during the execution of a search warrant for the garage of defendant's rented apartment, a sawed-off shotgun was seized from the trunk of an unregistered Mazda automobile.

Subsequently, defendant was indicted, along with others, and charged with four counts of criminal possession of a weapon in the third degree, two counts of burglary in the third degree and one count of conspiracy in the fourth degree. Defendant's pretrial motion to suppress the seized shotgun was denied.* After a jury trial, defendant was found guilty of all the charges with the exception of one count of burglary in

---

* Defendant's motion to suppress was otherwise granted in part and denied in part, not here relevant as only suppression of the shotgun is at issue.

the third degree. He was thereafter sentenced as a second felony offender to indeterminate prison terms of 3 to 6 years for the burglary conviction, 3 to 6 years for the two weapons possession (handgun) convictions to run concurrently with each other, 3 to 6 years for the two weapons possession (sawed-off shotgun) convictions to run concurrent with each other, and 2 to 4 years for the conspiracy conviction. The terms of the burglary conviction and the two sets of weapons possession convictions were also to run consecutive to each other.

We reject defendant's contention that the sawed-off shotgun was improperly admitted into evidence because it was not mentioned in the search warrant and therefore the police were not authorized to search the Mazda. Assuming that defendant has not waived standing to contest the seizure of the shotgun by failing to present evidence of standing at the suppression hearing, we turn to the issue of the legality of the search of the Mazda, which appears to be one of first impression in this State. The prevailing view in other jurisdictions permits the search of an automobile owned or controlled by the owner of the premises authorized to be searched by a warrant (*Commonwealth v Signorine*, 404 Mass 400, 535 NE2d 601, 603-604; 2 La Fave, Search and Seizure § 4.10 [c], at 322-324 [2d ed]). The prevailing view is consistent with United States Supreme Court rulings and should be followed here. In *United States v Ross* (456 US 798) the Supreme Court, in its majority opinion, reasoned that: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. * * * A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search" (*supra*, at 820-821). The court continued: "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand" (*supra*, at 821).

The court also held that "[t]his rule applies equally to all

containers" *(supra,* at 822). It is reasonable, therefore, to conclude here that inasmuch as the trunk of the garaged Mazda served as a container in the fixed premises (the garage) which was authorized to be searched under the warrant, its search was proper. Accordingly, the motion to suppress the sawed-off shotgun was properly denied. It is unnecessary to reach the issue of standing because, even if defendant had standing, the result would not change.

Contrary to defendant's argument, we also find that there was sufficient circumstantial evidence in the record to sustain the jury's verdict convicting defendant of criminal possession of the sawed-off shotgun. The applicable law is clear. Where the evidence on which the conviction is based is entirely circumstantial, "the conclusion of guilt must be consistent with and flow naturally from the proven facts, and that those facts viewed as a whole must exclude 'to a moral certainty' every conclusion other than guilt" *(People v Kennedy,* 47 NY2d 196, 202; *see, People v Sanchez,* 61 NY2d 1022, 1024). Absolute or metaphysical certainty is not required *(see, People v Sacco,* 64 AD2d 324, 328). As the Court of Appeals has stated, " '[i]n the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts' " *(People v Kennedy, supra,* at 203, quoting *People v Wachowicz,* 22 NY2d 369, 372). In such cases, a reviewing court must view the evidence in the light most favorable to the People because they have prevailed at trial and it is assumed that the jury credited the People's witnesses *(People v Kennedy, supra).*

In the case at bar, the facts proved permitted the jury to conclude that defendant shared access and control of the shotgun with and in the company of others at the Paddleford residence and elsewhere during October 1986. Although defendant denied to the police that he had seen the weapon since the previous spring when he admittedly fired it for target practice, there was testimony that he retrieved the shotgun from the closet, held it in his hands and presented it to others to examine at the Paddleford residence. There was also testimony that the shotgun was taken with defendant and others when they went out in Powers' Pontiac. Defendant was shown to have had some property interest in the Mazda, as he worked on it while it was in his garage as part of an arrangement to purchase it. The evidence also revealed that on Powers' leaving the Paddleford residence on November 1, 1986, he took the shotgun with him. The jury could conclude

that the conspirators stored the shotgun in the trunk of the unregistered Mazda in defendant's garage after November 1, 1986. Moreover, based on defendant's asking his interrogator what would happen to him if he told where the shotgun was located, the jury could reasonably infer that defendant knew that the shotgun was in the trunk of the Mazda. Defendant's inquiry and his denial of having seen the sawed-off shotgun since the previous spring, in light of his participation in the criminal conspiracy which had not ended as of the time of his arrest, support the conclusion that the shotgun was stored in the Mazda with his knowledge and consent in the furtherance of the ongoing conspiracy *(see, People v Diaz,* 41 AD2d 382, *affd* 34 NY2d 689).

Additionally, a shotgun shell which could be fired from the sawed-off shotgun was found in defendant's dresser drawer. Powers, Horton and Van Norman had no reason to hide the shotgun from defendant, and if the object was to hide the shotgun from defendant, it seems unlikely that they would have hidden it in the trunk of the car he was working on in his garage where he would surely discover it. Viewing the facts established at trial and the inferences to be drawn therefrom in the light most favorable to the People, one can reach no other conclusion but that defendant knew that the shotgun was in the Mazda trunk in his garage.

Defendant's contention that County Court erred in failing to instruct the jury that witness Michael Karl was an accomplice as a matter of law is also without merit. The receiver of stolen property is not an accomplice unless such person played some role in the planning or execution of the theft *(People v Brooks,* 34 NY2d 475, 480; *People v Fort,* 145 AD2d 983). The court properly left this issue to the jury to decide as a question of fact because there was evidence that Karl had no knowledge of a theft by defendant until he saw defendant with the stolen property *(see, People v Basch,* 36 NY2d 154, 157).

Finally, defendant's argument that his sentence is harsh and excessive because his codefendants received lesser sentences than he did is rejected. A sentencing court is not required to sentence all participants in the crime the same *(People v Danny G.,* 61 NY2d 169, 174). The participation of each codefendant and the background of each differed. Defendant, a second felony offender, was found to be in possession of a handgun and it appears that, but for his arrest, he would have attempted to commit future planned burglaries and robberies. The sentence imposed was not the harshest which defendant could have received and defendant has not shown a

clear abuse of County Court's discretion. This court should therefore not substitute its judgment for that of the sentencing court.

Judgment affirmed. Mahoney, P. J., Weiss, Mikoll, Crew III and Harvey, JJ., concur.