■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES JORDAN, Appellant. [597 NYS2d 807] —Levine, J. Appeals (1) from a judgment of the County Court of Washington County (Berke, J.), rendered December 11, 1991, upon a verdict convicting defendant of the crimes of murder in the second degree, burglary in the second degree, intimidating a victim or witness in the third degree, assault in the third degree and criminal mischief in the fourth degree, and (2) by permission, from an order of said court, entered September 28, 1992, which denied defendant's motion pursuant to CPL 440.10 to vacate said judgment, without a hearing.

Defendant stands convicted for his conduct on the evening of May 4, 1991 and the early morning hours of May 5, 1991 which culminated in his stabbing his former girlfriend,

---

Cynthia Knapp, in the chest causing her death. The victim had returned home to her apartment in the Town of Fort Edward, Washington County, with her companion John Mills shortly after 2:00 A.M. on May 5, 1991 to find the front door open and defendant inside. The victim and Mills immediately left the apartment to drive to the police station to report this to the police. Before they were able to drive off, defendant ran up to the car, opened the passenger door and stabbed the victim in the chest using a knife from the victim's kitchen. Mills unsuccessfully attempted to apprehend defendant, who had fled, and returned to find that the victim had died from the wound.

At approximately 6:00 A.M., defendant voluntarily accompanied police officers to a State Police substation where he was read and waived his *Miranda* rights. Defendant initially presented an alibi and denied any involvement in the stabbing. However, after a State Police investigator falsely advised defendant that he "had just come from Glens Falls Hospital, and I saw [the victim] and she was doing fine; she had received 18 stitches from a knife wound just below her collar bone, and that she would be released shortly", defendant gave a full account of the events and signed a confession. Defendant also stated to the investigator that "I was sober, she was the one that was drunk." Defendant was then informed of the victim's death and placed under arrest. Defendant's oral and written statements were received in evidence at trial.

The trial evidence was that on the evening of May 4, 1991 in the presence of a friend of the victim, defendant had kicked in the victim's front door, injured her by throwing a table at her and threatened to kill her if she reported his conduct to police. The victim had called the police and defendant had been arrested for assault and briefly detained. A police officer and the victim's friend testified that when defendant saw the victim at the police station after the arrest he pointed at her and said "I will kill you". Several other witnesses also testified to hearing defendant threaten to kill the victim and to other prior bad acts by defendant toward the victim. The theory of the defense was that defendant and Mills had been fighting and that Mills accidentally stabbed the victim and then blamed it on defendant.

The jury found defendant guilty of murder in the second degree and burglary in the second degree for his conduct on May 5, 1991. He was also convicted for his conduct the prior evening of intimidating a victim or witness in the third degree, assault in the third degree and criminal mischief in

the fourth degree. Defendant now appeals from the judgment of conviction and from the denial of his subsequent motion pursuant to CPL 440.10 to vacate the judgment.

Defendant's principal ground for reversal is that County Court erred in denying suppression of his confession, arguing that it was involuntary because it was made after a police officer falsely informed him that the victim was alive and would soon be released from the hospital. Mere deception by the police is not alone sufficient to render a confession inadmissible unless accompanied by a promise or threat that could induce a false confession *(see, People v Tarsia,* 50 NY2d 1, 11; *People v Pereira,* 26 NY2d 265, 268-269; *People v McQueen,* 18 NY2d 337, 346). Such police stratagems do not compel a conclusion of involuntariness unless there is a showing that the deception was "so fundamentally unfair as to deny due process" *(People v Tarsia, supra,* at 11; *see, People v Isaacson,* 44 NY2d 511, 520-523). The Court of Appeals has specifically held that the deceptive technique of informing a murder suspect that the victim is still alive, in the absence of a promise or threat, does not render a confession involuntary *(People v Pereira, supra; People v McQueen, supra).* Nor was defendant's confession rendered involuntary because the interrogating police officer also told defendant that there were two additional witnesses to the incident other than the victim and Mills. The officer testified that he was so informed and in fact two witnesses testified at trial to their observations of the incident. Even if the statement was untrue at the time, it did not render defendant's subsequent confession involuntary *(see, People v Hassell,* 180 AD2d 819, 820, *lv denied* 79 NY2d 1050; *People v Watson,* 134 AD2d 729, 730, *lv denied* 70 NY2d 961).

Equally unpersuasive is defendant's contention that his confession was involuntary because it was made early in the morning and after he had been drinking. There was uncontroverted evidence present at the suppression hearing that defendant was neither intoxicated nor unduly fatigued at the time the statement was taken, that he was only detained approximately five hours, and that he was not abused or maltreated and received *Miranda* warnings. County Court's finding that the confession was voluntary should not be disturbed *(see, People v Yukl,* 25 NY2d 585, 588, *cert denied* 400 US 851). Moreover, defendant's contention raised for the first time on appeal that County Court committed reversible error in its charge to the jury on the standard by which to evaluate the voluntariness of defendant's confession is not preserved for appellate review *(see,* CPL 470.05 [2]; *People v Decambre,* 143

AD2d 927, *lv denied* 73 NY2d 854). In any event, the court's lengthy and repeated instructions on this point adequately conveyed the correct standards to be applied to the determination of the voluntariness of defendant's statements.

Alternatively, defendant contends that County Court erred by admitting evidence of defendant's prior bad acts consisting of his prior abusive behavior toward the victim. This included testimony of the victim's sister and friends regarding repeated death threats made by defendant to the victim, testimony that defendant had physically abused the victim during the course of their relationship resulting in frequent calls to police, and playing a "911" tape from the evening of May 4, 1991 during which the victim and her friend pleaded for police protection from defendant, who was then assaulting the victim.

After a combined *Huntley/Ventimiglia\** hearing, County Court ruled that defendant's prior abusive treatment of and threats to the victim were admissible under *People v Molineux* (168 NY 264, 293) to show, *inter alia,* defendant's intent, because the defense claimed lack of intent due to intoxication and drug use, and identity, defendant having filed a notice of alibi and claimed that Mills was the perpetrator. We concur in that decision *(see, People v Alvino,* 71 NY2d 233, 241-243; *People v Allweiss,* 48 NY2d 40, 47). There is ample precedent for the admission of testimony regarding a prior hostile relationship between the victim and the defendant in homicide cases, including the defendant's threats and repeated abuse of the victim *(see, People v DeLeon,* 177 AD2d 641, 642, *lv denied* 79 NY2d 855; *People v Adames,* 168 AD2d 623, *lv denied* 77 NY2d 957; *People v Wright,* 167 AD2d 959, 960, *lv denied* 77 NY2d 845; *see also, People v Johnson,* 185 NY 219, 226; *People v Linton,* 166 AD2d 670, *lv denied* 77 NY2d 879). Further, contrary to defendant's assertions on appeal, County Court expressly engaged in the requisite balancing before ruling on the *Ventimiglia* application *(see, People v Ventimiglia,* 52 NY2d 350, 359-360, *supra).* Defendant failed to request a limiting instruction on the foregoing *Molineux* evidence or to object to the omission, and this objective is unpreserved for appellate review *(see,* CPL 470.05 [2]; *People v Adames, supra; People v Wolcott,* 111 AD2d 513).

Reviewing the record, as we must, most favorably to the People *(see, People v Allah,* 71 NY2d 830, 831-832), we also reject defendant's contention that there was a failure of proof on the burglary in the second degree conviction in that he had

---

\* *See, People v Ventimiglia,* 52 NY2d 350; *People v Huntley,* 15 NY2d 72.

permission to enter the victim's apartment and that his intent when he entered was to reconcile and not to commit a crime therein. The victim had, the previous night, caused defendant's arrest for entering her apartment and assaulting her. After defendant was arrested on the assault charge, he threatened to kill her. The jury clearly could have inferred that any prior permission to enter the victim's home had been revoked and that defendant entered unlawfully with intent to carry out his threat.

We have examined defendant's remaining contentions, including that he was denied effective assistance of counsel, and conclude that they do not warrant reversal. Finally, County Court did not err in denying defendant's CPL 440.10 motion without a hearing.

Weiss, P. J., Mercure, Mahoney and Casey, JJ., concur. Ordered that the judgment and order are affirmed.