2 THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OTIS MORRIS, Appellant. [667 NYS2d 123] —Peters, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered July 18, 1995, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.

On January 9, 1994, defendant and Tremain Bowen traveled together in Bowen's black Plymouth Laser automobile to a bar and dance club known as the 519 Club in the City of Albany. Before entering the club, defendant placed his .9-millimeter semiautomatic handgun in the glove compartment. After consuming two bottles of champagne, defendant became involved in a fight. All patrons involved in the brawl were forced to leave through an emergency door exiting into a parking lot. As the brawl continued, defendant was struck on the back of the head with a bottle swung by Robert Wilson. He thereafter retrieved his handgun from Bowen's vehicle, shot Wilson, returned to Bowen's car and told Bowen to drop him off at his mother's home. Shortly thereafter, he was found unconscious on the stairs leading to her second-floor apartment.

After being transported by ambulance and treated at the hospital for his head laceration, police, believing defendant was a victim, requested that he come to the police station to provide a statement. Upon his arrival at approximately 9:00 A.M., he was placed in a waiting area where he began watching television. He appeared alert, drank several beverages and was offered food which he refused. During his interview at ap-

proximately 1:00 P.M., defendant was described by police officers as alert, responding clearly to questions regarding the incident. Preceded by *Miranda* warnings, defendant described himself as a victim.

Investigation at the scene of the crime as well as interviews with witnesses, including Bowen, resulted in defendant's arrest at approximately 3:00 P.M. for the murder of Wilson. Contending that he was lightheaded, defendant was brought back to the hospital where he remained until approximately 6:00 P.M. Returning to the police station and being placed in a cell at approximately 7:20 P.M., defendant was observed lying down. Shortly before 9:00 P.M., he complained of pain and was again returned to the hospital, being released at 10:45 P.M. Upon his return, officers were advised that he had probably sustained a concussion and should therefore be awakened approximately every two hours.

Upon subsequent questioning from 11:30 P.M. to approximately 12:50 A.M., defendant appeared coherent but tired. At that time, he admitted that he had transported his gun in Bowen's car. Upon being returned to his cell, he was observed lying down several times between 12:50 A.M. and 5:45 A.M. He was again *Mirandized*, interviewed by detectives, offered food and beverage, and gave a third oral statement to the police admitting that he had shot Wilson. Executed search warrants revealed a .9-millimeter semiautomatic handgun in a closet at the top of the staircase where defendant was found and a box of cartridges for a .9-millimeter handgun at his wife's apartment.

Mindful of the heavy burden borne by the People in showing the voluntariness of defendant's statements beyond a reasonable doubt (*see, People v Cooper*, 101 AD2d 1), we conclude that neither the length of time defendant spent with police nor his physical condition rendered his statements involuntary (*see, People v Tarsia*, 50 NY2d 1). Defendant voluntarily arrived at the police station to provide a statement in his capacity as the victim of a crime. He was repeatedly *Mirandized*, offered refreshments throughout his stay and, upon his request, brought to the hospital for medical treatment. Testimony gleaned from the suppression hearing reveals that he was alert during all questioning and that on no occasion did questioning last for more than two hours (*see, People v Sobchik*, 228 AD2d 800; *People v Jordan*, 193 AD2d 890, *lv denied* 82 NY2d 756). Protestations to the contrary and arguments regarding intoxication are not supported by the record (*see, People v Jordan, supra; People v Zehner*, 112 AD2d 465, *lv denied* 66 NY2d 619).

As to the error claimed in a failure to charge the jury regarding corroboration of accomplice testimony, we note that the failure to so request such charge or object when the court failed to do so rendered such issue unpreserved for our review (*see, People v Holzer*, 52 NY2d 947, 948). Had we considered it, we would find no error since Bowen was not an accomplice as a matter of law but, rather, at most an accessory after the fact (*see, People v Dygert*, 229 AD2d 735, *lv denied* 89 NY2d 921; *People v Sacco*, 199 AD2d 288, *lv dismissed* 82 NY2d 853, *lv denied* 84 NY2d 832).

Reviewing next the challenge to the legal sufficiency of the evidence, we conclude, when viewing it in a light most favorable to the prosecution, that sufficient evidence was presented to sustain defendant's convictions beyond a reasonable doubt (*see, People v Harper*, 75 NY2d 313; *People v Contes*, 60 NY2d 620). In addition to the forensic evidence, numerous witnesses testified including Steven Johnson and Tracy Thomas who were present at the club on the night of the murder. Both Johnson and Thomas saw a man who was bleeding from the back of his head shoot Wilson. They further described the car and license plate number which matched Bowen's vehicle. Bowen testified that he saw defendant retrieve the gun from the glove compartment of the car, walk back toward the parking lot and shoot Wilson. Concluding that the trier of fact has given the evidence the weight it should be accorded, we find no basis to set aside the verdict (*see, People v Bleakley*, 69 NY2d 490).

With the balance of defendant's contentions having been considered and found to be without merit, we hereby affirm.

Mikoll, J. P., Yesawich Jr., Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.