OPINION OF THE COURT
Elisa S. Koenderman, J.
The defendant, Marvin Joseph, moves to reargue this court’s decision and order, rendered February 3, 2012 after a Huntley ¡Dunaway hearing, denying suppression of his videotaped statement to the Queens District Attorney’s Office (QDAO). Specifically, the defendant alleges that the QDAO compelled him to make a statement by falsely promising to investigate whatever information the defendant provided to them. The defendant contends that the QDAO therefore violated rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0) and that the defendant’s statement should be precluded as a sanction (see People v Perez, — Misc 3d —, 2012 NY Slip Op 22103 [2012]). Because there is no evidence that the QDAO made a promise that was likely to induce the defendant to falsely confess or that the QDAO engaged in conduct which was so fundamentally unfair as to deny him due process, the defendant’s statement is admissible as voluntarily made. Since this court did not overlook or misapprehend any fact or point of law in denying suppression, the defendant’s motion to reargue is denied (see CPLR 2221 [d] [2]).*
A defendant’s statement may not be received in evidence against him at a criminal proceeding if it is involuntarily made *835 (see CPL 60.45 [1]). A defendant’s statement is involuntarily made when it is obtained by anyone (1) by the use or threatened use of physical force or by “any other improper conduct or undue pressure which impair[s] the defendant’s physical or mental condition to the extent of undermining his ability to make a choice” whether to make a statement (CPL 60.45 [2] [a]); (2) when it is obtained by law enforcement by a promise or statement which “creates a substantial risk that the defendant might falsely incriminate himself’ (CPL 60.45 [2] [b] [i]); or (3) in violation of the defendant’s constitutional rights (CPL 60.45 [2] [b] [ii]).
The use of mere deception by law enforcement is not enough to render a defendant’s statement involuntary (see People v McQueen, 18 NY2d 337, 346 [1966]). The police may use stratagems to obtain a statement such as telling the defendant that the victim is still alive (see People v Pereira, 26 NY2d 265, 268-269 [1970]); that he failed a polygraph test (see People v Zehner, 112 AD2d 465, 466 [3d Dept 1985]); that he has been identified by witnesses (see People v Jordan, 193 AD2d 890, 892 [3d Dept 1993]); or that his actions were caught on video surveillance (see People v Dishaw, 30 AD3d 689, 690-691 [3d Dept 2006]). Indeed, the police are permitted to act as “midwife to a declaration naturally born of remorse, or relief, or desperation, or calculation” (People v Tarsia, 50 NY2d 1, 10 [1980], citing Culombe v Connecticut, 367 US 568, 576 [1961]).
The police may not, however, use tactics that are so fundamentally unfair so as to deprive the defendant of due process (see id.-, People v Jaeger, 96 AD3d 1172 [3d Dept 2012]; People v Gutierrez, 96 AD3d 1455 [4th Dept 2012]; Dishaw, 30 AD3d at 690-691; People v McCoy, 284 AD2d 554, 554-555 [2d Dept 2001]; People v Miller, 268 AD2d 600, 601 [2d Dept 2000]). While the potential of “third degree methods” to generate false confessions is readily recognizable, more subtle methods are equally prohibited (Tarsia, 50 NY2d at 11). Thus where the police told the defendant that an infallible polygraph machine which knew the truth “just like [you] and God” proved that he was lying, his confession was found to be involuntary and suppressed (id., citing People v Leonard, 59 AD2d 1, 14-15 [2d Dept 1977]). Similarly, where police retained the services of a psychiatrist who purported to offer help to the defendant yet subjected him to an unrelenting interrogation, his confession was deemed to be mentally coerced and inadmissible (see People v Leyra, 302 NY 353, 362-363 [1951]). Additionally, where police detained the *836 defendant for more than 19 hours where he was continuously questioned, deprived of sleep, and isolated from family and friends, the defendant’s “will [was] overborne and his capacity for self-determination critically impaired” and his statement was suppressed (People v Anderson, 42 NY2d 35, 41 [1977]). Regardless of the method by which it is obtained, “an involuntary confession is by its very nature evidence of nothing” (Leyra, 302 NY at 364).
 Even assuming arguendo that the QDAO falsely promised the defendant that they would investigate whatever he told them, “such deception did not create a substantial risk that the defendant might falsely incriminate himself” (Gutierrez, 96 AD3d at 1455). To the contrary, the alleged promise is likely to encourage the defendant to provide exculpatory information. A failure to investigate the information provided by the defendant may have other negative consequences, but it does not vitiate the voluntariness of the defendant’s statement (see e.g. People v Richardson, 202 AD2d 958 [4th Dept 1994]). The ethics of making such an alleged false promise are irrelevant to the issue of whether the defendant’s statement should be suppressed. Consequently, this court respectfully declines to follow Perez, by which it is not bound.
In sum, “[t]here is no evidence that the defendant requested an attorney at any time, that he was deprived of food or drink, or that he was subjected to persistent and overbearing interrogation or deception so fundamentally unfair as to deny him due process” (McCoy, 284 AD2d at 555). Moreover, the record establishes that the defendant knowingly, intelligently and voluntarily waived his Miranda rights (see id.). The defendant’s videotaped statement to the QDAO therefore is admissible as voluntarily made and the defendant’s motion to reargue is denied.

 CPLR 2221 (d) (2) provides that “[a] motion for leave to reargue . . . shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion.”