■ The People of the State of New York, Respondent, v Andrew R. Furman, Appellant. [59 NYS3d 165]—

Rumsey, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered December 5, 2014, upon a verdict convicting defendant of the crimes of burglary

in the second degree, grand larceny in the third degree and criminal possession of stolen property in the third degree.

Defendant was indicted and charged with burglary in the second degree, grand larceny in the third degree and criminal possession of stolen property in the third degree based on allegations that he broke into a garage attached to the residence of James Phillips (hereinafter the victim), located in Montgomery County, and stole a motorcycle, which he then transported to Schenectady County and sold. Following a jury trial, defendant was convicted as charged and sentenced to concurrent prison terms of eight years, with five years of postrelease supervision, on his conviction for burglary in the second degree, $3\frac{1}{2}$ to 7 years on his conviction of grand larceny in the third degree and $3\frac{1}{2}$ to 7 years on his conviction of criminal possession of stolen property in the third degree. Defendant now appeals.

Initially, defendant contends that the evidence was legally insufficient to support the verdict because the testimony of Joseph Chirico, George Abraham and Marquin McLean, whom he asserts were accomplices, was not sufficiently corroborated by evidence tending to connect defendant with the charged crimes. "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). "[T]o be an accomplice for corroboration purposes, the witness must somehow be criminally implicated and potentially subject to prosecution for the conduct or factual transaction related to the crime for which the defendant is on trial" (*People v Whyte*, 144 AD3d 1393, 1394 [2016] [internal quotations marks, brackets and citations omitted]). "The determination of accomplice status depends on whether there is a showing that the witness took part in the preparation or perpetration of the crime with the intent to assist therein, or that the witness counseled, induced or encouraged the crime" (*People v Adams*, 307 AD2d 475, 476 [2003] [internal quotation marks and citations omitted], *lv denied* 1 NY3d 566 [2003]). "Thus, a witness is an accomplice as a matter of law only if the jury could reasonably reach no other conclusion but that he or she participated in the offense charged or an offense based upon the same or some of the same facts or conduct which constitute the offense charged" (*People v Whyte*, 144 AD3d at 1394 [internal quotation marks, brackets and citations omitted]). A person is guilty of burglary in the second degree when he or she knowingly enters or remains unlawfully in a dwelling with the intent to commit a crime therein

(*see* Penal Law § 140.25 [2]). "To be convicted of grand larceny in the third degree and criminal possession of stolen property in the third degree, it must be established that [the] defendant stole property and knowingly possessed stolen property, the value of which exceeded $3,000" (*People v Hardy*, 57 AD3d 1100, 1101 [2008], *lv denied* 12 NY3d 784 [2009]; *see* Penal Law §§ 155.35 [1]; 165.50).

Chirico testified that he was a long-time acquaintance of defendant and that they were together on the night of March 14, 2013 when defendant told him that he knew where there was a motorcycle he could steal. Chirico further testified that, at defendant's request, he gave defendant a ride to a location near the victim's home at approximately 11:00 p.m. and that defendant contacted him about 20 minutes later by cell phone to ask that he meet defendant at Abraham's residence, which is approximately one-quarter mile from the victim's residence. Chirico also testified that when he arrived at Abraham's residence, he saw a motorcycle that he later identified as the victim's in the back of Abraham's pickup truck, and that he arranged for defendant to speak by cell phone with McLean, whom he knew to be a drug dealer residing in Schenectady County, about selling the motorcycle. Chirico further testified that he followed defendant and Abraham in his own car when they transported the motorcycle in Abraham's pickup truck to Schenectady County where McLean purchased the motorcycle. We find that Chirico's testimony—that he had advance knowledge of defendant's plan to steal a motorcycle, that he assisted in the perpetration of that crime by transporting defendant to the immediate vicinity of the victim's home and that he further assisted defendant with the sale of the motorcycle—is sufficient to make Chirico an accomplice for corroboration purposes as a matter of law.

However, we conclude that neither Abraham nor McLean is an accomplice as a matter of law. Specifically, there is no proof that either had any knowledge of defendant's theft of the motorcycle until they saw him with stolen property; therefore, they are not accomplices with respect to the burglary and larceny charges (*see People v La Porte*, 217 AD2d 821, 821 [1995]; *People v Dupont*, 193 AD2d 958, 959 [1993], *lv denied* 82 NY2d 805 [1993]; *People v Powers*, 173 AD2d 886, 890 [1991], *lv denied* 78 NY2d 1079 [1991]; *People v Sherman*, 156 AD2d 889, 891 [1989], *lv denied* 75 NY2d 970 [1990]). Similarly, as they both denied knowing that the motorcycle was stolen, and inasmuch as different inferences reasonably could have been drawn with respect to their knowledge that the motorcycle

was stolen, neither Abraham nor McLean is an accomplice as a matter of law for corroboration purposes with respect to the criminal possession charge (*see People v Adams*, 307 AD2d at 476; *People v Rezey*, 111 AD2d 1035 [1985]).*

Given that Chirico was an accomplice, we now turn to whether his testimony was sufficiently corroborated. Evidence is legally sufficient to corroborate accomplice testimony "if it tends to connect the defendant to the crime, thereby assuring the jury that the accomplice has offered credible probative evidence" (*People v Lawrence*, 141 AD3d 828, 832 [2016] [internal quotation marks and citations omitted], *lv denied* 28 NY3d 1073 [2016]; *see People v Ruiz*, 148 AD3d 1212, 1215 [2017]). The testimony of the victim and the police officers who initially investigated the theft is sufficient to corroborate Chirico's testimony that defendant broke into the victim's home and stole the motorcycle. The victim testified that defendant knew that he owned a motorcycle that was stored in the garage because defendant had visited the victim's home on several occasions prior to the theft as a guest of a neighbor and had ridden the motorcycle on one or two of those occasions. The victim further testified that his motorcycle was stolen from his house between 9:30 p.m. on March 14, 2013 and 3:30 a.m. the following morning, which is consistent with Chirico's testimony that he dropped defendant off in that vicinity at approximately 11:00 p.m. The two police officers who responded on the night of the theft testified that there was a single tire track leading from the victim's driveway to the street where Abraham resided, which is consistent with Chirico's testimony that defendant was in possession of the victim's motorcycle when he met defendant at Abraham's residence. The testimony of Abraham and McLean further corroborates Chirico's testimony. Abraham testified that defendant came to his home during the night of March 14, 2013 and asked him to transport a motorcycle, which he later identified as the victim's, to Schenectady County. Abraham further testified that defendant accompanied him when he transported the motorcycle. McLean testified that he received a phone call from Chirico during which he spoke with defendant, and he thereafter purchased the victim's motorcycle from defendant for $200 in cash and a quantity of cocaine.

---

* However, defendant's argument that the jury should have been charged to determine whether Abraham and McLean were accomplices as a matter of fact is not preserved for our review because defendant failed to request such a charge or object to its omission (*see People v Morris*, 245 AD2d 954, 956 [1997], *lv denied* 91 NY2d 928 [1998]).

We also reject defendant's argument that there was legally insufficient evidence that the value of the motorcycle exceeded $3,000. "In this context, value is defined as the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime" (*People v Helms*, 119 AD3d 1153, 1154 [2014] [internal quotation marks and citations omitted], *lv denied* 24 NY3d 1044 [2014]). "In determining the value of stolen property, the jury need only have a reasonable, rather than speculative, basis for inferring that the value exceeded the statutory requirement" (*id.* at 1154 [internal quotation marks and citations omitted]; *see People v Adams*, 8 AD3d 893, 894 [2004]; *People v Sheehy*, 274 AD2d 844, 845 [2000], *lv denied* 95 NY2d 938 [2000]). Moreover, "because property valuation is not strictly a subject for expert testimony, opinion testimony by a lay witness is competent to establish the value of the property if the witness is acquainted with the value of similar property" (*People v Sheehy*, 274 AD2d at 845).

The victim testified that the 2007 motorcycle had 11,500 miles on the odometer when he purchased it in 2011 for $4,000 and that it remained in excellent condition with mileage of 14,000 when it was stolen in 2013. Robert Sanders testified that he had 50 years of experience in motor sports and in the valuation of motorcycles. He testified that Kelly Blue Book, which is relied upon to determine the value of motorcycles (*see People v Brown*, 275 AD2d 668, 668 [2000], *lv denied* 96 NY2d 732 [2001]), showed a value of $3,410 for a motorcycle with the characteristics of the victim's. Sanders further testified that the fair market value of motorcycles can also be determined by reference to asking prices in the private marketplace, as shown in sources such as Craigslist. In that regard, Sanders testified that he located four motorcycles of the same model as the victim's on Craigslist with model years from 2005 through 2013, and that the asking prices for the three that were the same age or older than the victim's motorcycle ranged from $4,100 to $4,800, with an average of $4,366. Notably, the lowest asking price for the comparable motorcycles identified by Sanders was $4,100; none had an asking price of less than $3,000. Based on the information that he considered, Sanders opined that the victim's motorcycle had a value of $4,200. Such testimony provided legally sufficient evidence to conclude that the value of the motorcycle exceeded $3,000.

Accordingly, viewing the evidence in the light most favorable to the People (*see People v Pierce*, 106 AD3d 1198, 1199 [2013]),

we find that the evidence was legally sufficient to support defendant's convictions. Moreover, upon reviewing the evidence in a neutral light, and according deference to the jury's credibility determinations, we find that the verdict was not against the weight of the evidence (*see People v Lawrence*, 141 AD3d at 829; *People v Myrick*, 135 AD3d 1069, 1074 [2016]). Finally, defendant's arguments that he was denied the effective assistance of counsel and that his sentence is harsh and excessive have been considered and determined to lack merit.

Peters, P.J., Garry, Rose and Clark, JJ., concur. Ordered that the judgment is affirmed.