People v Hahn (2018 NY Slip Op 01361)





People v Hahn


2018 NY Slip Op 01361


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

108176

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
DANIEL K. HAHN, Appellant.

Calendar Date: January 8, 2018

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Rumsey, JJ.


Brian M. Quinn, Albany, for appellant.
Karen Heggen, District Attorney, Ballston Spa (Gordon Eddy of counsel), for respondent.


Egan Jr., J.P.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered December 3, 2015, upon a verdict convicting defendant of the crime of criminal possession of stolen property in the third degree.
In February 2015, defendant was charged by indictment with criminal possession of stolen property in the third degree in connection with the theft of a 2011 Haulmark enclosed cargo trailer — and the tools and equipment contained therein — from a construction site in the Village of Schuylerville, Saratoga County. Following a jury trial, defendant was convicted as charged and he was thereafter sentenced, as a second felony offender, to a prison term of 3½ to 7 years. Defendant now appeals.
Initially, defendant's challenge to the legal sufficiency of the evidence was not preserved for appellate review inasmuch as his counsel made only a general motion to dismiss at the close of the People's case-in-chief (see People v Perillo, 144 AD3d 1399, 1399-1400 [2016], lvs denied 29 NY3d 948, 951 [2017]; People v Hardy, 57 AD3d 1100, 1101 [2008], lv denied 12 NY3d 784 [2009]), and County Court was not otherwise presented with nor did it expressly decide the legal issue presently raised on appeal (see People v Graham, 25 NY3d 994, 996-997 [2015]; People v Hawkins, 11 NY3d 484, 492 [2008]). Nevertheless, inasmuch as defendant also argues that his conviction was against the weight of the evidence, we will necessarily assess whether the elements of the crime were proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Holmes, 151 AD3d 1181, 1182 [2017], lv denied 29 NY3d 1128 [*2][2017]).
Defendant argues that the People failed to prove that he knew the subject property was stolen or that the value of the stolen property exceeded $3,000. We disagree. To be found guilty of criminal possession of stolen property in the third degree, the People must prove, beyond a reasonable doubt, that the defendant "knowingly possesse[d] stolen property, with intent to benefit himself [or herself] or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds [$3,000]" (Penal Law § 165.50). To that end, a "defendant's knowledge that property is stolen may be proven circumstantially, and the unexplained or falsely explained recent exclusive possession of the fruits of a crime allows a jury to draw a permissible inference that [the] defendant knew the property was stolen" (People v Landfair, 191 AD2d 825, 826 [1993], lv denied 81 NY2d 1015 [1993]; accord People v Fauntleroy, 108 AD3d 885, 886 [2013], lv denied 21 NY3d 1073 [2013]; see People v Cintron, 95 NY2d 329, 332 [2000]).
Here, there was ample evidence submitted at trial establishing defendant's knowledge that the trailer and tools at issue were, in fact, stolen (see People v Holmes, 151 AD3d at 1182-1183; People v Fauntleroy, 108 AD3d at 886-887). Michael Manney, a codefendant, testified that he and another individual were with defendant driving around when defendant "spotted the trailer" and apparently concocted the plan to steal it. Manney testified that defendant backed his vehicle up to the trailer, hooked it up and drove off. Manney testified that he later observed defendant cut the locks off the trailer and remove the license plate. James Carlton, defendant's friend and the owner of the auto repair shop where the stolen trailer was later parked, testified that he spoke with defendant the following morning and averred that defendant admitted to having stolen the trailer. Carlton testified that he thereafter told defendant to remove the trailer from the premises and subsequently sent a text message to an investigator with the Washington County Sheriff's Office to report the theft.
Even discounting the accounts of Manney and Carlton as self-serving with respect to defendant's direct involvement in the actual theft of the trailer, the People introduced additional evidence demonstrating defendant's knowledge that the trailer was stolen. The People presented testimony from two individuals — as well as corroborating cell phone records — indicating that, on the morning after the trailer was stolen, defendant was hurriedly attempting to sell the trailer and the contents thereof at a steeply discounted price. Brian Sawn, a pawn shop owner, testified that defendant called him numerous times and offered to sell him the trailer and the tools contained therein for $1,000 [FN1]. Mark Mitchell, the individual who ultimately purchased the trailer from defendant, indicated that defendant drove to his house and offered to sell him the trailer for $1,000. He also testified that, when he subsequently arrived to view the trailer, defendant indicated that he had no paperwork for it and told him that he would have to register it as a "homemade trailer." Mitchell testified that he ultimately gave defendant $1,000 in cash for the trailer. Police investigators, meanwhile, testified that, after receiving Carlton's text message, they [*3]surveilled his place of business and observed, among other things, defendant both showing the trailer to the subject individuals and removing tools from the trailer and placing them into a nearby vehicle. Tellingly, upon defendant's subsequent arrest, he was found in possession of $1,000 cash and various tools that had been removed from the stolen trailer.
We are likewise satisfied that the evidence established that the value of the subject stolen property exceeded $3,000. For our purposes, "value is defined as 'the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime'" (People v Helms, 119 AD3d 1153, 1154 [2014], lv denied 24 NY3d 1044 [2014], quoting Penal Law § 155.20 [1]; see People v Furman, 152 AD3d 870, 874 [2017], lv denied 30 NY3d 1060 [2017]). "In determining the value of stolen property, the jury need only have a reasonable, rather than speculative, basis for inferring that the value exceeded $1,000" (People v Adams, 8 AD3d 893, 894 [2004] [citations omitted]), and "opinion testimony by a lay witness is competent to establish the value of the property [so long as] the witness is acquainted with the value of similar property" (People v Furman, 152 AD3d at 874 [internal quotation marks and citation omitted]; accord People v Helms, 119 AD3d at 1155-1156).
Here, Charles Hotaling, the owner of Nycorp Construction — the company whose trailer and tools were stolen — testified that he had 35 years of experience purchasing construction tools and equipment and did so as part of his regular job duties. Hotaling testified that he purchased the trailer in 2011 for approximately $4,700 and opined that, at the time of the theft, it was worth approximately $2,000. He also testified in detail as to the various tools contained in the trailer, opining that their total value was approximately $20,000 [FN2]. Because a different verdict would not have been unreasonable, we must view the evidence in a neutral light, while deferring to the jury's credibility determinations, to determine if the verdict is against the weight of the evidence (see People v Grierson, 154 AD3d 1071, 1072 [2017]). Based on the foregoing, we find that each element of defendant's conviction for criminal possession of stolen property in the third degree was proven beyond a reasonable doubt (see People v Royster, 107 AD3d 1298, 1301 [2013], lv denied 22 NY3d 958 [2013]).
We also find unpersuasive defendant's contention that he was deprived of fair trial due to certain alleged evidentiary errors committed by County Court. We perceive no error in County Court's denial of defendant's request to call the prosecutor as a trial witness with respect to certain discussions that he had with Manney, wherein Manney acknowledged that he had lied in a prior statement that he had provided to the police. County Court properly determined that any proposed testimony by the prosecutor would be collateral inasmuch as it had "no direct bearing on any issue in the case other than the credibility of a witness" (People v Kerley, 154 AD3d 1074, 1075 [2017] [internal quotation marks and citation omitted], lv denied ___ NY3d ___ [Jan. [*4]30, 2018]), and "[t]he general rule is that a party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility" (People v Alvino, 71 NY2d 233, 247 [1987]; see People v DeFreitas, 116 AD3d 1078, 1081 [2014], lv denied 24 NY3d 960 [2014]). Nor was defendant prejudiced by the court's ruling, as defendant's cross-examination of Manney was not limited in any way and both the People and defendant's counsel specifically addressed Manney's prior inconsistent statement, his subsequent plea deal and the reasons underlying his change in testimony. Accordingly, the proposed testimony was properly precluded as irrelevant (see People v Kerley, 154 AD3d at 1075).
We similarly find no error with County Court's admission of defendant's cell phone and cell phone records. The testimony of investigators James Barber and John Deyette sufficiently identified the subject cell phone as the one obtained from defendant's vehicle, adequately set forth a strict chain of custody for same and established the authenticity of the cell phone records obtained therefrom (see People v Pleasant, 149 AD3d 1257, 1258 [2017], lv denied 30 NY3d 1022 [2017]). Additionally, any error that may have resulted from County Court's ruling allowing the People to play a portion of the videotape of defendant's interview with police, wherein he can be observed punching a wall, was harmless insofar as there is no reasonable view of the evidence suggesting that this portion of the video reasonably contributed to defendant's conviction (see People v Newkirk, 75 AD3d 853, 857 [2010], lv denied 16 NY3d 834 [2011]).[FN3]
Next, defendant failed to preserve for review his challenge to the search and seizure of his cell phone inasmuch as he did not provide sufficient sworn allegations of fact in support of his omnibus motion seeking a suppression hearing, nor did he otherwise render a specific objection at trial with respect to the introduction of same based on the purported illegality of the search and seizure (see People v Graham, 25 NY3d at 997; People v Watkins, 151 AD3d 1913, 1913 [2017], lv denied 30 NY3d 984 [2017]). Defendant also admittedly failed to preserve for our review his claim of prosecutorial misconduct based upon reference to or use of the word "confederate" in describing his cell phone by a witness or by the People during summation (see People v Collier, 146 AD3d 1146, 1151 [2017], lv denied 30 NY3d 948 [2017]), and we decline defendant's request to exercise our interest of justice jurisdiction to take corrective action (see CPL 470.05 [2]; 470.15 [6]).
Lastly, defendant's contention that he received an enhanced sentence in retaliation for exercising his constitutional right to trial was not preserved for review inasmuch as neither defendant nor his counsel raised such an issue at sentencing (see People v Hurley, 75 NY2d 887, 999 [1990]; People v Martinez, 144 AD3d 1326, 1326 [2016], lv denied 28 NY3d 1186 [2017]). In any event, the fact that defendant's sentence was greater than that offered during plea negotiations (see People v Martinez, 144 AD3d at 1326) or was more severe than that received by any of his codefendants (see People v Hagaman, 139 AD3d 1183, 1185 [2016], lv denied 28 NY3d 930 [2016]) does not constitute proof that he was penalized for exercising his right to trial. Nor do we find that his sentence was harsh or excessive. In view of defendant's extensive criminal history, which includes a prior felony conviction for burglary and various periods of incarceration for violating both probation and parole, and his failure to take any responsibility or show remorse for his criminal conduct, we find no abuse of discretion or extraordinary circumstances that would warrant a reduction of his sentence in the interest of justice (see People v Jones, 155 AD3d 1111, 1115 [2017]). Defendant's remaining contentions, to the extent not addressed, have been reviewed and found to be without merit.
Lynch, Clark, Mulvey and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Sawn also testified that he and another individual later drove to take a look at the trailer and associated tools. He testified that, upon viewing same, he thought that defendant's offer seemed "too good to be true." Sawn testified that he did not have the money to buy the trailer at that time; however, 15 minutes after having viewed the trailer with defendant, defendant called and indicated to him that he already sold the trailer to another buyer.

Footnote 2: Hotaling testified that the tools and equipment located inside the trailer included certain speciality color-coated metal screws, a steel chop-saw, a Dewalt compressor, a pancake compressor, a Subaru generator, two complete harness sets with pulleys, a five-gallon master heater, a cordless grease gun, a power cutter, a Kobalt tool kit, two Makita tool sets, a Hitachi grinder, an orange ramp set with case, a shingle remover, a Milwaukee job-site radio, two five-gallon Eagle gas cans with spouts, a sledgehammer, nail guns, tech guns and numerous other miscellaneous hand and power tools.

Footnote 3: Notably, the videotape was muted during this portion of the tape as County Court had previously ruled that defendant had validly invoked his right to counsel prior thereto, precluding any statements that he may have made to the police thereafter.